# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

GLEN FOLSOM,                          )
                                      )
    **Plaintiff,**            )
                                      )
v.                                    )        **Case No. CIV-13-632-D**
                                      )
MARK KNUTSON et al.,                  )
                                      )
    **Defendants.**           )

## REPORT AND RECOMMENDATION

Plaintiff Glen Folsom, a state prisoner appearing pro se, brings this action under 42 U.S.C. § 1983, alleging violations of his federal constitutional rights. United States District Judge Timothy D. DeGiusti has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b). In this Report and Recommendation, the undersigned addresses three motions filed by Plaintiff (Doc. Nos. 40, 52, 60) that request preliminary injunctive relief. The undersigned recommends that these requests be DENIED.

## BACKGROUND

On December 11, 2013, Mr. Folsom filed an Amended Complaint (Doc. No. 43), involving alleged events at the Oklahoma State Reformatory in Granite, Oklahoma; James Crabtree Correctional Center in Helena, Oklahoma; and Lexington Assessment and Reception Center (or "Lexington Correctional Center"), in Lexington, Oklahoma. Mr. Folsom was incarcerated at Davis Correctional Facility ("DCF") in Holdenville, Oklahoma, at the time he filed his Amended Complaint, but he has since been transferred

among facilities and is currently incarcerated at Joseph Harp Correctional Center ("JHCC") in Lexington, Oklahoma. *See* Am. Compl. at 1; Notice, Doc. No. 57; Notice, Doc. No. 100.

Motion for a "Temporary Restraining Order and/or a<br>Preliminary Injunction" (Doc. No. 40)

Concurrently with his Amended Complaint, and while incarcerated at DCF, Mr. Folsom filed a Motion for a "Temporary Restraining Order and/or a Preliminary Injunction" (Doc. No. 40). In that Motion, Mr. Folsom recounts his circumstances in various facilities before his transfer to DCF, generally asserting that he experienced harassment and retaliation, as well as difficulty accessing mental health services that led to a hospitalization. Pl.'s Mot., Doc. No. 40, at 1; *see also id.* at 6 (referencing hospitalization). He further asserts, among other things, that at one facility he "was put on the yard and heard threats on his life" and that at another facility he was "beat on by staff," "did not get clean clothing [or] bed[d]ing," was "depriv[ed] of adequate hygi[e]ne," and faced a "false charge in [a] disciplinary proceeding." *Id.* at 1.[1]

Mr. Folsom contends that at DCF he faced similar circumstances to those at his previous facilities; however, he does not allege any physical altercations with staff. *See id.* at 2. Mr. Folsom also asserts that his transfer to DCF "put [his] life in danger over group risks of other inmates [who told him to leave] the yard . . . [or] they would hurt [him]" and that he has been threatened with "more misconduct[s] if he [does not] go to

---

[1] When quoting documents filed by Mr. Folsom, the undersigned has occasionally altered capitalization to improve readability.

the yard here at [DCF] where his life and safety [are] in danger." *Id..* Mr. Folsom further states that he "can't sleep over bad dreams over what has happened and what he feels . . . might happen yet." *Id.* at 6.

Ultimately, Mr. Folsom seeks an order for the Oklahoma Department of Corrections ("ODOC"), a non-defendant, to transfer him to JHCC "for mental health care and for a safe place for [him,] to stop all retaliation and harassment, to give [him] all his rights and equal protection under the law." *See id.* at 2. Mr. Folsom contends that, otherwise, he "will end up back in protective custody in segregation" with an "inadequate law library," hindering his ability to "fight his Complaint fair[ly], no matter [to] where [he] gets transfer[red]." *Id..* Mr. Folsom further explains that he is seeking this order "and[/]or damages to stop [the] likelihood of future unlawful conduct on the defendant[s'] part and the [ODOC]." *Id.* at 5; *see also id.* at 6 (seeking money damages). Mr. Folsom then states that he "is asking this Court for help to stop the unlawful conduct of the defendants, [before his] life and safety and mental and emotional . . . [are] threatened anymore." *Id.* at 6. Finally, Mr. Folsom states he requires an injunction

> for all the damages that ha[ve] been done and are still being done[,] . . . to help [him] get back some of his privileges and quality of life in his prison living conditions[,] to have all his United States [c]onstitution[al] right[s] . . . given back to him in his prison life[,] [t]o be treat[ed] fairly in his prison life[,] and [to] stop all retaliated action and harassment from all Defendants.

*Id.* at 8.[2]

---

[2] No named Defendants appear to be staff members at DCF. *See* Am. Compl. at 1, 2-4. Thus, although Mr. Folsom repeatedly references conduct by "Defendants," as detailed

<u>Untitled Motion for Preliminary Injunctive Relief (Doc. No. 52)</u>

On January 2, 2014, while still incarcerated at DCF, Mr. Folsom filed an untitled document in which he seeks preliminary injunctive relief against non-defendants "W. Burney and Warden Wilkenson." *See* Pl.'s Mot., Doc. No. 52. Mr. Folsom generally alleges that he has experienced difficulties in obtaining access to legal resources and supplies and that he has "deadlines." *See id.* at 1-2. More specifically, Mr. Folsom asserts that not all document copies he requested have been provided by W. Burney. *See id.* at 1-2. Mr. Folsom again requests a court order for his transfer to JHCC, specifically JHCC's "G unit or the yard where [he] can get [the] help he needs," but not the "F unit," i.e. "the mental health lock down unit." *See id.* at 3.

<u>Untitled Motion for a Temporary Restraining Order
and Preliminary Injunction (Doc. No. 60)</u>

On February 18, 2014, while incarcerated at Cimarron Correctional Facility ("CCF") in Cushing, Oklahoma, Mr. Folsom filed an untitled document in which he again seeks a temporary restraining order and preliminary injunction against ODOC. *See* Pl.'s Mot., Doc. No. 60. Mr. Folsom asserts that at CCF he has experienced difficulties obtaining supplies for "his Legal Work."[3] *See id.* Mr. Folsom also included six exhibits that are copies of requests he has submitted to CCF staff, requesting document copies and supplies related to "Legal Work," as well as inquiring into an alleged delay in receiving

---

above, it is not clear whether he is referring to named Defendants in this case or to non-defendant DCF staff members.

[3] Mr. Folsom submitted this Motion on tissue paper, asserting that such paper was used due to his concern that "they will [l]ook at other paperwork." *See* Pl.'s Mot., Doc. No. 60.

"3 Legal Law Letters."[4]  Pl.'s Mot. Exhibits, Doc. No. 60-1.  In two of the requests, Mr. Folsom refers to unspecified deadlines.  *See id.* at 2, 3.  Mr. Folsom states that he "is asking this Court to step in."  Pl.'s Mot., Doc. No. 60.

## ANALYSIS

Although Mr. Folsom expressly requested a temporary restraining order in at least two of his pending motions (Doc. Nos. 40, 60), he does not meet the criteria for such an order because he did not set forth "specific facts in an affidavit or a verified complaint [to] clearly show that immediate and irreparable injury, loss, or damage will result to [him] before the adverse party can be heard in opposition."  *See* Fed. R. Civ. P. 65(b)(1)(A).  Moreover, with respect to any request for a preliminary injunction that would require action or inaction by ODOC, Mr. Folsom has not met the procedural requirements for such a request in any of his three motions.  Specifically, Mr. Folsom makes no indication that he has properly notified or attempted to notify ODOC or any official of ODOC authorized to take the steps he requests.  *See*, *e.g.*, Fed. R. Civ. P. 65(a)(1), (b)(1); *see also Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (reiterating that pro se litigants must follow applicable procedural rules).  Regardless of these procedural deficiencies, the undersigned's analysis of the merits of Plaintiff's motions applies equally to all of the preliminary injunctive relief requested by Plaintiff and, for the reasons shown, requires its denial.

---

[4] It is not clear that one of the requests—a Request for Disbursement of Legal Costs— was actually submitted by Mr. Folsom because it is not signed by the Law Library Supervisor, as the form appears to require upon submission.  *See* Pl.'s Mot. Exhibits, Doc. No. 60-1, at 6.

Preliminary injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The plaintiff must establish, among other factors, "that he is likely to suffer irreparable harm in the absence of preliminary relief."[5] *See id.* at 20. To meet the "irreparable harm" requirement, the plaintiff must establish that an injury is both imminent and not theoretical. *See Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). Such an injury must be beyond "merely serious or substantial" and, generally, one for which an adequate monetary remedy is unavailable. *See id.*; *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001).

As noted, Mr. Folsom seeks an order for non-defendant ODOC to transfer him to JHCC "for mental health care and for a safe place for [him,] to stop all retaliation and harassment, to give [him] all his rights and equal protection under the law." Pl.'s Mot., Doc. No. 40, at 2; *see also id.* at 8; Pl.'s Mot., Doc. No. 52, at 3. This request for preliminary injunctive relief appears largely moot in light of Mr. Folsom's recent transfer

---

[5] "[C]ourts have consistently noted that [b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (second alteration in original) (internal quotation marks omitted). Other factors a plaintiff must establish include "that he is likely to succeed on the merits," "that the balance of equities tips in his favor" and "that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see also Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (listing factors).

to JHCC. *See* Notice, Doc. No. 100. Nevertheless, as discussed below, the undersigned finds that Mr. Folsom's request is deficient for independent reasons.

Mr. Folsom does not allege sufficient facts to infer, much less present evidence to establish, that he will suffer irreparable harm absent an injunction. That is, although Mr. Folsom alleges that he believes he is suffering or may suffer harm from one or more Defendants' or non-defendants' alleged conduct, Mr. Folsom's allegations are either conclusory or lack necessary factual support to meet the standard for "irreparable harm."

For instance, Mr. Folsom asserts that his transfer to DCF "put [his] life in danger over group risks of other inmates [who told him to leave] the yard . . . [or] they would hurt [him]" and that he has been threatened with "more misconduct[s] if he [does not] go to the yard [at DCF] where his life and safety [are] in danger." Pl.'s Mot., Doc. No. 40, at 2. Although this is a *contention* of very serious harm, Mr. Folsom must present *facts* to show that such harm is imminent and not simply theoretical—which he does not do. *See Heideman*, 348 F.3d at 1189.

Mr. Folsom's assertions that he faces "retaliation and harassment" and that he has received inadequate supplies and services, including mental health services and legal supplies, are likewise deficient. Such allegations alone fail to establish that Mr. Folsom is facing harm beyond that which is merely serious or substantial. *See* Pl.'s Mot., Doc. No. 40, at 2, 8; Pl.'s Mot., Doc. No. 52, at 1-2; *Heideman*, 348 F.3d at 1189. For instance, other than conclusory assertions, Mr. Folsom does not detail his alleged ongoing mental health issues for which he seeks treatment. *See* Pl.'s Mot., Doc. No. 40, at 2. Similarly, although Mr. Folsom refers to legal "deadlines," he does not specify

these deadlines or represent that he has been prejudiced in any of his cases as a result of either lacking supplies or receiving legal mail after an intentional delay. *See* Pl.'s Mot., Doc. No. 52, at 2; Pl.'s Mot., Doc. No. 60; Pl.'s Mot. Exhibits, Doc. No. 60-1; *see also Harrell v. Keohane*, 621 F.2d 1059, 1060-61 (10th Cir. 1980) (per curiam) (permitting prison limits on free supplies, particularly when causing no prejudice); *Lewis v. Casey*, 518 U.S. 343, 351-52, 362 (1996) (requiring deprivation of "meaningful access to the courts" to be established through actual injury and noting courts' general avoidance of becoming "enmeshed in the minutiae of prison operations" (internal quotation marks omitted)).

Further, Mr. Folsom's contentions also fail to show that an adequate monetary remedy is unavailable for any alleged harm. *See Heideman*, 348 F.3d at 1189; *Prairie Band of Potawatomi Indians*, 253 F.3d at 1250. In fact, Mr. Folsom's requests for money damages to some extent suggest otherwise. *See* Pl.'s Mot., Doc. No. 40, at 2, 6.

Because Mr. Folsom has not established that he is likely to suffer irreparable harm in the absence of preliminary injunctive relief, he has failed to clearly show that he is entitled to such relief. *See Winter*, 555 U.S. at 20, 22. Accordingly, to the extent that Mr. Folsom's requests in his motions (Doc. Nos. 40, 52, 60) are not moot, the undersigned recommends that they be DENIED.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Mr. Folsom's motions (Doc. Nos. 40, 52, 60) be DENIED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by September 2, 2014, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation does not terminate the referral in this case.

ENTERED this 12th day of August, 2014.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE