# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **GLEN FOLSOM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-13-632-D** |
| | ) | |
| **MARK KNUTSON et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Glen Folsom, a state prisoner appearing pro se and proceeding *in forma pauperis*, brings this action under 42 U.S.C. § 1983, alleging violations of his federal constitutional rights. United States District Judge Timothy D. DeGiusti has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b). This matter is now before the Court on a dispositive motion filed by Defendants Mark Knutson, Janet Dowling, Felicia Harris, Tracy McCollum, Mike McDougal, Josh Lee, and Jim Farris (Doc. No. 81), as well as a separate dispositive motion filed by Defendant Dan Davis (Doc. No. 132).

## BACKGROUND

Mr. Folsom has filed an Amended Complaint (Doc. No. 43), along with Exhibits (Doc. No. 43-2), in this civil action.[1] Mr. Folsom's allegations involve circumstances at three facilities, each of which is operated by the Oklahoma Department of Corrections

---

[1] Mr. Folsom filed the Amended Complaint while incarcerated at Davis Correctional Facility ("DCF"), in Holdenville, Oklahoma. He is currently incarcerated at the Joseph Harp Correctional Center in Lexington, Oklahoma.

("ODOC"): James Crabtree Correctional Center ("JCCC") in Helena, Oklahoma; the Oklahoma State Reformatory ("OSR") in Granite, Oklahoma; and Lexington Correctional Center ("LCC") in Lexington, Oklahoma. Am. Compl. at 1-2, 3-4;[2] *see* Okla. Stat. tit. 57, § 509. Mr. Folsom brings claims against ten Defendants, each of whom is or was an ODOC employee. *See* Am. Compl. at 1-2, 3-4. From ODOC's headquarters, Mr. Folsom names Mark Knutson, the ODOC Director's Designee. *Id.* at 1. From JCCC, Mr. Folsom names Janet Dowling, the Warden; Dan Davis, a former officer; Chanda Grice, a former medical staff member; and Felicia Harris, a law library staff member. *Id.* at 3. From OSR, Mr. Folsom names Tracy McCollum, the Warden. *Id.* at 2. Finally, from LCC, Mr. Folsom names Mike McDougal, a unit manager; Lieutenant Lee, an officer; Mr. Francis, Chief of Security; and Jim Farris, the Warden. *Id.* at 3-4.

Mr. Folsom describes the nature of his case as follows:

> I was sexually harassed by Defendant Dan Davis and when I started the grievance process I was instantly fired from my job, then [Defendant] Grice wrote two misconducts on me in retaliation I was locked up in segregation. [Defendant] Harris would not give me all the policy OPs and laws and forms so I could appeal the misconduct and Grievances I need in segregation. Then to retaliat[e] and harass me even more [Defendant] Dowling shipped me to [OSR] where my Life was in danger. [Defendant] McCollum Warden at [OSR] let his staff h[a]rass and retaliat[e] on me by one not giving me [stuff from] the Law Library[,] two not giving me mental

---

[2] Citations to documents filed with the Court use the page numbers assigned by the Court's electronic filing system. When quoting from the Amended Complaint and other handwritten filings, the undersigned has occasionally altered the capitalization to improve readability. The undersigned has also supplemented missing punctuation in circumstances where the addition of the punctuation does not affect the meaning of the statement.

> health treatment as I needed[.] [Defendant Mark] Knutson Director['s]
> Designee retaliat[ed] and h[a]rassed me on the misconducts and Offender
> Grievance Process. By not stopping this cruel and unusual punishment I
> have gotten over trying to stop a male g[u]ard from sexually h[a]rassing me
> for months. Then I was beat on and verbal[ly] abused by staff at [LCC] and
> given another misconduct in retaliation over the sexual[] harassment case I
> have on [ODOC] and placed in segregation and shipped again.

Am. Compl. at 2. Although he presents his legal theories imprecisely, Mr. Folsom

generally alleges that Defendants have violated various of his constitutional rights.[3] *See*

Am. Compl. at 5-12. For the alleged violations, Mr. Folsom seeks nominal,

compensatory, and punitive damages, as well as his costs in this lawsuit. Am. Compl. at

14.

The docket does not reflect that Defendants Grice and Francis have been served in

this matter, and these Defendants have filed no response to the Amended Complaint.

*See, e.g.*, Order, Doc. No. 150; Process Receipt & Return, Doc. No. 97; Order, Doc. No.

83. Defendants Knutson, Dowling, Harris, McCollum, McDougal, Lee, and Farris have

collectively moved to dismiss or, alternatively, for summary judgment (Doc. No. 81,

---

[3] In his Amended Complaint, Mr. Folsom does not include any allegations that, even
liberally construed, assert claims under state law. The undersigned thus construes the
Amended Complaint as asserting violations of federal rights and seeking relief under 42
U.S.C. § 1983. *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)
(emphasizing that court "will not . . . construct a legal theory on a [pro se] plaintiff's
behalf"). Further, Mr. Folsom repeatedly refers to violations of the Prison Rape
Elimination Act of 2003 ("PREA"), 42 U.S.C. §§ 15601-15609. *E.g.*, Am. Compl. at 5,
8. However, Mr. Folsom's "reliance on alleged violations of PREA is misplaced as
courts have held that PREA 'does not create a right of action that is privately enforceable
by an individual civil litigant.'" *Burke v. Corr. Corp. of Am.*, No. 09-3068-SAC, 2010
WL 890209, at *2 (D. Kan. Mar. 10, 2010) (quoting *Moorman v. Herrington*, 4:08CV-
P127-M, 2009 WL 2020669, at *2 (W.D. Ky. July 9, 2009) (collecting cases)). Any such
claim should be dismissed.

"Disp. Mot. 1"), and Defendant Davis, who was served later, has also moved to dismiss or, alternatively, for summary judgment (Doc. No. 132, "Disp. Mot. 2"). Mr. Folsom has responded to those motions (Doc. Nos. 109, 133). The matters are ready for decision.

ANALYSIS

In their dispositive motions, the moving Defendants (or "Movants") seek dismissal or summary judgment and assert that Mr. Folsom has failed to state a claim upon which relief can be granted under 42 U.S.C. § 1983 and that they are entitled to qualified immunity. *See* Disp. Mot. 1 at 22-41, 50-52; Disp. Mot. 2 at 6-8, 13-14. Movants also contend that Mr. Folsom's claims are subject to dismissal because he failed to exhaust his administrative remedies before filing suit and because claims for money damages against Defendants in their official capacities are barred by sovereign immunity. *See* Disp. Mot. 1 at 41-50; Disp. Mot. 2 at 8-13.

Notwithstanding the titles of their motions, Movants assert that their dispositive motions rely only upon documentary evidence that may properly be considered on a motion to dismiss, and each Motion expressly requests that the "Court not convert this motion to a motion for summary judgment" based upon Movants' reliance upon such documents. *See* Disp. Mot. 1 at 20-21; Disp. Mot. 2 at 2-4. Further, Movants do not present their dispositive motions in a manner consistent with Local Civil Rule 56.1(b), as would be required for a motion for summary judgment. The motions do not contain the requisite "concise statement of material facts to which [Movants] contend[] no genuine issue of fact exists"—a statement in which the facts must be numbered and that must "refer with particularity to those portions of the record upon which movant relies." *See*

Disp. Mot. 1 at 12-18 (providing only a "Summary of Facts," summarizing Mr. Folsom's allegations without addressing whether the allegations are undisputed); Disp. Mot. 2 at 2 (same). Further, in other filings by Movants, they refer to their dispositive motions as only "Motions to Dismiss." *See, e.g.*, Doc. No. 122 at 1-4; Doc. No. 135 at 2, 3, 5.

Based on the above considerations, the undersigned construes Movants' dispositive motions strictly as motions to dismiss and has declined to consider matters beyond the pleadings. *See* Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 12(d). Below, the undersigned first considers Movants' argument as to dismissal of official-capacity claims and then considers whether Mr. Folsom has stated a plausible claim to relief against any Defendant in his or her individual capacity. Finally, the undersigned addresses Movants' remaining arguments for dismissal—finding that they are entitled to qualified immunity but that their affirmative defense of nonexhaustion of administrative remedies has not been established.

A. *Whether Plaintiff's Official-Capacity Claims for Money Damages Against Defendants Under 42 U.S.C. § 1983 Are Barred by Eleventh Amendment Immunity*

Mr. Folsom does not expressly state whether he is suing Defendants in their individual capacities, official capacities, or both. Defendants Knutson, Dowling, Davis, Harris, McCollum, McDougal, Lee, and Farris have nevertheless moved to dismiss any official-capacity claims against them for money damages on the basis of Eleventh Amendment sovereign immunity. *See* Disp. Mot. 1 at 49-50; Disp. Mot. 2 at 8-10. As discussed below, the state's sovereign immunity extends to ODOC employees in their official capacities to the extent that money damages are sought. Because all Defendants

are such employees, the undersigned considers below whether the Court lacks subject-matter jurisdiction over official-capacity claims for money damages as to all Defendants. *See U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) (noting that if a state defendant raises the issue, "addressing the threshold jurisdictional matter [is] obligatory"); *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000) (holding that Eleventh Amendment immunity presents a jurisdictional bar when effectively asserted). The Court also considers whether Mr. Folsom's official-capacity claims against Defendants Grice and Francis are barred by Eleventh Amendment sovereign immunity. *See Burlbaw*, 548 F.3d at 942 (permitting court to raise Eleventh Amendment sovereign immunity sua sponte); *see also* 28 U.S.C. §§ 1915(e)(2)(iii), 1915A(b)(2); 42 U.S.C. § 1997e(c)(1).

In accordance with the doctrine of sovereign immunity, as adopted in the Eleventh Amendment, a federal court may not hear a claim brought by a private citizen against a U.S. state unless the state consents to suit or Congress unequivocally abrogates the state's immunity. U.S. Const. amend. XI; *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-55 (1996). "Oklahoma has not waived sovereign immunity against § 1983 claims in federal district court." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). Nor has Congress abrogated state immunity in any way pertinent to Mr. Folsom's § 1983 claims. *See*, *e.g.*, *Quern v. Jordan*, 440 U.S. 332, 342, 345 (1979).

Eleventh Amendment immunity applies to any state agency that is considered "an arm of the state." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). Whether an agency is an

arm of the state is a question of federal law, but courts make this determination by analyzing the "nature of the entity created by state law." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (internal quotation marks omitted).

Here, the relevant state agency is ODOC. *See* Okla. Stat. tit. 57, §§ 502 (indicating ODOC has "jurisdiction and control" over state penal institutions), 509 (listing state-operated facilities). The Tenth Circuit considers ODOC an arm of the State of Oklahoma for Eleventh Amendment purposes and has extended Eleventh Amendment immunity to ODOC employees in their official capacities when sued for damages. *See, e.g.*, *Eastwood v. Dep't of Corr. of Okla.*, 846 F.2d 627, 628, 631-32 (10th Cir. 1988). ODOC's powers and budgetary responsibilities further establish that it is an arm of the State of Oklahoma. *See, e.g.*, Okla. Stat. tit. 57, §§ 502-504, 505-508, 509, 510; *id.* tit. 62, §§ 34.42, 34.50-.52, 34.57; *see also Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765-66 (2002).

Defendants, as employees of ODOC, are protected by Eleventh Amendment immunity in their official capacities to the extent money damages are sought. A suit seeking recovery of money damages from a state official in his or her official capacity is the equivalent of a suit against the state itself. *See Edelman*, 415 U.S. at 663 (recognizing application of Eleventh Amendment immunity to official-capacity claim for money damages against state official). Thus, any claims in the Amended Complaint for money damages against Defendants in their official capacities should be dismissed based on Defendants' noted immunity, and because the Court lacks subject-matter jurisdiction over such claims at least with respect to claims against the Movants. *See* 28 U.S.C. §§

1915(e)(2)(iii), 1915A(b)(2); 42 U.S.C. § 1997e(c)(1); Fed. R. Civ. P. 12(h)(3) (requiring

dismissal "at any time" subject-matter jurisdiction is lacking); *Burlbaw*, 548 F.3d at 942.[4]

### B. Whether Mr. Folsom Has Stated an Individual-Capacity Claim upon Which Relief May Be Granted Under 42 U.S.C. § 1983

Movants have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss

Mr. Folsom's individual-capacity claims against them, asserting that Mr. Folsom has

failed to state a claim upon which relief can be granted under 42 U.S.C. § 1983. *See*

Disp. Mot. 1 at 22-41; Disp. Mot. 2 at 6-7. In addition to considering such contentions

set forth in those dispositive motions, the Court is required to evaluate the sufficiency of

any complaint brought by a prisoner (1) with respect to prison conditions; (2) seeking

redress against a governmental entity, officer, or employee; or (3) who is proceeding *in

forma pauperis*. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a); 42 U.S.C. § 1997e(c)(1).

The Court must dismiss a complaint or any portion of a complaint that fails to state a

claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii),

1915A(b)(1); 42 U.S.C. § 1997e(c)(1). The standard of review for such screening is the

same as that applied when considering a motion to dismiss for failure to state a claim

---

[4] To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that the violation of a federal right that is the subject of the claim "was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "[A]n entity with Eleventh Amendment immunity is not a 'person' within the meaning of § 1983" and, accordingly, is "not subject to suit under § 1983 in either federal court or state court." *Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 365 (1990) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)). Thus, the undersigned's recommendation of dismissal based on Eleventh Amendment immunity means that Mr. Folsom's claims seeking monetary relief from Defendants in their official capacities also should be dismissed for failure to state a claim upon which relief may be granted because the "person" requirement of § 1983 is not satisfied.

upon which relief can be granted, as detailed below. *See Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007).

Although the Court construes a pro se litigant's pleadings liberally, no litigant is exempt from compliance with applicable procedural rules. *See Kay*, 500 F.3d at 1218. Such rules require a plaintiff's complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint fails to state such a claim when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (footnote and citation omitted). Bare legal conclusions in a complaint, however, are not assumed to be true; legal conclusions "must be supported by factual allegations" to state a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (noting that although courts construe pro se pleadings liberally, courts "will not supply additional factual allegations to round out a plaintiff's complaint"). Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense."

*Iqbal*, 556 U.S. at 679; *see also Gee v. Pacheco*, 627 F.3d 1178, 1184-85 (10th Cir. 2010) (discussing *Iqbal*).

To state a claim upon which relief can be granted under 42 U.S.C. § 1983, a plaintiff must allege facts to show that a person acting under color of state law violated a federal right of the plaintiff, i.e., a right secured by the Constitution or laws of the United States. *West*, 487 U.S. 42, 48 (1988). Specific factual requirements necessary to state a plausible claim to relief under § 1983 "vary with the constitutional provision at issue," *see Iqbal*, 556 U.S. at 676. Nevertheless, regardless of each constitutional provision's specific requirements, when a defendant is sued in his or her individual capacity under § 1983, the plaintiff must establish certain basic elements as to each defendant.

First, the plaintiff must establish the defendant's "personal involvement or participation" in the alleged violation of a federal right. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996); *see also Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). Second, the plaintiff must establish a causal connection between the acts of that particular defendant and the alleged violation of a federal right. *See Iqbal*, 556 U.S. at 676; *Pahls v. Thomas*, 718 F.3d 1210, 1225-28 (10th Cir. 2013). Third, the plaintiff must establish that the defendant acted with the state of mind required for the alleged underlying federal rights violation. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986).

These three requirements—personal participation, causation, and state of mind— also apply when a supervisor is alleged to be responsible for the misconduct of a subordinate. *See Schneider*, 717 F.3d at 767 (emphasizing that § 1983 claim against supervisor cannot be premised on vicarious liability); *Iqbal*, 556 U.S. at 676-77; *see also*

*Dodds v. Richardson*, 614 F.3d 1185, 1199 n.8 (10th Cir. 2010) (noting that elements of liability may overlap).

More specifically, to establish a supervisor's personal involvement, a plaintiff must show that the supervisor's own individual actions violated a federal right of the plaintiff, for example through the supervisor's specific direction of a subordinate employee's action or through the supervisor's promulgation, creation, implementation, or responsibility for the continuation of a policy that resulted in the violation. *See Iqbal*, 556 U.S. at 676-77; *Schneider*, 717 F.3d at 767-68; *Pahls*, 718 F.3d at 1225, 1226 (requiring plaintiff to "identify the specific polic[y] over which [a] particular defendant[] possessed responsibility and that led to the alleged constitutional violation"); *Dodds*, 614 F.3d at 1194, 1199. In this regard, it is not sufficient "merely to show [the] defendant was in charge of other state actors who actually committed the violation." *Dodds*, 614 F.3d at 1195 (internal quotation marks omitted). To establish causation—i.e., that a supervisor caused a violation of the plaintiff's federal rights—the plaintiff must establish that a subordinate of the defendant-supervisor violated the plaintiff's federal rights and that "the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause" such a violation. *See Schneider*, 717 F.3d at 768 (internal quotation marks omitted); *see also Dodds*, 614 F.3d at 1195-96, 1198. Finally, to establish state of mind, the plaintiff must show that the supervisor acted with certain requisite intent, the exact nature of which depends on the type of violation alleged but is no less than the state of mind required for the subordinate to commit the underlying violation. *See Schneider*, 717 F.3d at 769; *Daniels*, 474 U.S. at 330; *Porro v. Barnes*,

624 F.3d 1322, 1328 (10th Cir. 2010); *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014).

Mr. Folsom's Amended Complaint is organized into ten counts with factual allegations and legal claims often overlapping among these counts. *See* Am. Compl. at 5-12. For simplicity, the undersigned has primarily considered Mr. Folsom's pleading through reference to his legal claims in roughly chronological order, rather than adhering to the pleading's format.

1. Claims Relating to Sexual Harassment at JCCC

Mr. Folsom alleges that Defendant Davis "sexually harassed" him from approximately September 1, 2012, through November 25, 2012, while Mr. Folsom was incarcerated at JCCC. Am. Compl. at 2, 5. Specifically, Mr. Folsom alleges that "[Defendant] Davis would come into the shower and make sexual comments and would not give privacy to Mr. Folsom." *Id.* at 5. Mr. Folsom alleges that he told Defendant Davis that he "was not gay" and "to l[ea]ve him alone." *Id.* Mr. Folsom further alleges that the harassment "stopped after [Mr.] Folsom to[]ld staff he [would] call the news[,] then staff called Internal Affairs. [Defendant] Davis was gone." *Id.* Mr. Folsom separately alleges that "[Defendant] Dowling knew about the sexual harassment and did not stop it." *Id.* at 7; *see also id.* at 8 (asserting that "[Defendant] Dowling let her staff sexual[l]y harass Mr. Folsom for months").

In support of the above allegations, Mr. Folsom attached documentary evidence from the prison grievance process. In a November 2012 Request to Staff addressed to JCCC's Chief of Security, who is not a Defendant, Mr. Folsom stated:

> On 11/14/2012 while I was taking a shower [Defendant] Davis kept on
> repeatedly coming to the shower[.] He would gaze at my genitalia, grin
> and wink wink. This is the last incident in a long train of sexual harassment
> at the hands of this officer. He kept on suggestively licking his lips. It
> freaked me out. It was outrageous.

Am. Compl. Exs., Doc. No. 43-2, at 6.[5] In addition to stating that he sought to exhaust

his administrative remedies to "file a lawsuit over this issue," Mr. Folsom requested that

the Chief "[k]eep [Defendant] Davis away from me and protect me from retaliation." *Id.*

In response, Mr. Folsom was advised: "[T]his issue has been referred for investi[gation].

Measure[s] that were discussed with you have been taken. If you have other concerns for

retaliation, come see me." *Id.*

In a December 2012 Grievance addressed to Defendant Dowling, Mr. Folsom

repeated the allegations against Defendant Davis from the above Request to Staff. *Id.* at

4. Mr. Folsom added, "On 11/14/2012 I talked to Irvin and Bell[;] the next day Swindler

put me in cool off over it. Then I talked to the Chief about it all. Last week I talked to a

guy from Internal Affairs[;] he recorded it." *Id.* Mr. Folsom again stated that he was

seeking to exhaust his administrative remedies to "file a lawsuit over this," and asked

Defendant Dowling to "[p]rotect me from retaliation over this." *Id.* In response,

Defendant Dowling denied relief, noting that the Chief's answer to Mr. Folsom's

November 2012 Request to Staff was "accurate" as the "matter has been turned over for

---

[5] Mr. Folsom numbered his exhibits and provided an index, generally describing each
exhibit. The individual exhibits, along with the index, were filed together as a single
document with the Court (Doc. No. 43-2). For ease of reference, the undersigned cites
the exhibits based upon their page location within the single document, rather than using
Mr. Folsom's exhibit numbers.

investigation." *Id.* at 7. Defendant Dowling advised Mr. Folsom, "Should you have other concerns, please direct them to the Chief." *Id.*

Mr. Folsom appealed Defendant Dowling's decision to the Administrative Review Authority. He received a response from Defendant Knutson affirming Defendant Dowling's decision but also stating that Mr. Folsom had exhausted his administrative remedies under state law for claims, other than those arising in tort, that could be brought by Mr. Folsom against an ODOC employee.[6] *See id.* at 8 (citing Okla. Stat. tit. 57, § 564); Okla. Stat. tit. 57, § 566(A)(1).

### a. Claims Against Defendant Davis

The sexual harassment of a prisoner by a prison guard can, in certain circumstances, violate the prisoner's Eighth Amendment right to be free from cruel and unusual punishment. *Joseph v. Fed. Bureau of Prisons*, No. 00-1208, 2000 WL 1532783, at *1 (10th Cir. 2000). A prisoner alleging a constitutional claim—as opposed to an ordinary tort claim—of sexual harassment must allege facts to establish the objective and subjective components of an Eighth Amendment violation. *Id.*; *see also, e.g.*, *Barney v. Pulsipher*, 143 F.3d 1299, 1310 & n.10, 1312 n.15 (10th Cir. 1998). As to the objective component, the plaintiff must allege facts to show that the harassment was objectively, sufficiently serious, causing an "unnecessary and wanton infliction of pain." *Joseph*,

---

[6] Mr. Folsom filed a copy of the document he received in response to his appeal to the Administrative Review Authority, *see* Am. Compl. Exs. at 8, but did not include a copy of the appeal itself. The response reflects that Mr. Folsom sought relief on the basis of "[p]robable error committed by [Defendant Dowling]," but relief was denied because Mr. Folsom "did not substantiate [his] appeal with any authority for an error." Am. Compl. Exs. at 8.

2000 WL 1532783, at *1-2 (internal quotation marks omitted) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997)). As to the subjective component, the plaintiff must allege facts to show that the defendant acted with "'deliberate indifference' to a substantial risk of serious harm to an inmate." *Barney*, 143 F.3d at 1310 (quoting *Farmer*, 511 U.S. at 834); *see also Joseph*, 2000 WL 1532783, at *1-2.

Although Mr. Folsom alleges that Defendant Davis "sexually harassed" him for nearly three months, Mr. Folsom describes only one specific incident, allegedly occurring on November 14, 2012, when Defendant Davis allegedly observed Mr. Folsom's exposed genitalia in the shower, winked, and "suggestively lick[ed] his lips." *See* Am. Compl. at 2, 5; Am. Compl. Exs. at 6, 4. Although Mr. Folsom's allegations are concerning, a review of other cases in which sexual harassment or sexual abuse has been alleged in the prison context reflects that the alleged limited, nonphysical conduct is not objectively, sufficiently serious to give rise to an Eighth Amendment violation. *See, e.g.*, *Barney*, 143 F.3d at 1310 n.11 (noting that allegation of "severe verbal sexual harassment and intimidation" alone—in the absence of sexual "assault[]"—is insufficient to state an Eighth Amendment claim); *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1274, 1295-96 (D. Colo. 2009) (collecting cases); *McLain v. Dussert*, No. 12-cv-02504-REB-MEH, 2015 WL 970155, at *6 (D. Colo. Mar. 2, 2015) (collecting cases); *cf. Adkins v. Rodriguez*, 59 F.3d 1034, 1036-38 (10th Cir. 1995) (affirming qualified immunity dismissal based on plaintiff's failure to show that "she had a clearly established right to be free from verbal sexual harassment while an inmate"); *Cumbey v. Meachum*, 684 F.2d 712, 713-14 (10th

Cir. 1982) (per curiam) (noting limited right to privacy in prison exists but concluding that single, nudity-based comment by a guard was insufficient to constitute cruel and unusual punishment). "Although prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment." *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) (citation omitted). Having failed to allege sufficient facts to establish the objective component of an Eighth Amendment claim, Mr. Folsom has failed to state a sexual harassment claim under § 1983 upon which relief can be granted against Defendant Davis. Defendant Davis' dispositive motion should be granted insofar as dismissal of the claim is sought on this basis.[7]

b.  Claims Against Defendant Dowling

The failure to protect a prisoner from harm can, in certain circumstances, violate the prisoner's Eighth Amendment right to be free from cruel and unusual punishment.

---

[7] Defendant Davis separately contends that Mr. Folsom's claim against him is "barred" under 42 U.S.C. § 1997e(e) because Mr. Folsom alleges neither a physical injury resulting from Defendant Davis' alleged actions nor the commission of a physical sexual act by Defendant Davis. Disp. Mot. 2 at 7-8. Section 1997e(e) limits a prisoner-plaintiff's ability to recover damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act," as defined under 28 U.S.C. § 2246(2), which requires physical contact. *See* 42 U.S.C. § 1997e(e); *Searles v. Van Bebber*, 251 F.3d 869, 876-77, 878-79 (10th Cir. 2001). As interpreted, this limitation prevents the recovery of compensatory damages but does not entirely bar constitutional claims or prevent a prisoner-plaintiff from vindicating the deprivation of a constitutional right by seeking nominal damages, as well as punitive damages when appropriate. *Searles*, 251 F.3d at 878-79, 880-81; *see also Castillo v. Bobelu*, 1 F. Supp. 3d 1190, 1211 & n.38 (W.D. Okla. 2014). Mr. Folsom seeks nominal, compensatory, and punitive damages. Am. Compl. at 14. Thus, this claim is not "barred" under § 1997e(e), although that statute renders certain relief sought by Mr. Folsom unavailable.

*Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005). To state such a claim under § 1983, the plaintiff must allege facts to show, among other things, that the defendant knowingly "'disregard[ed] an excessive risk to inmate health and safety.'" *See id.* (quoting *Farmer*, 511 U.S. at 837).

As noted, Mr. Folsom alleges that "[Defendant] Dowling knew about the sexual harassment and did not stop it." Am. Compl. at 7; *see also id.* at 8 (asserting that "[Defendant] Dowling let her staff sexual[l]y harass Mr. Folsom for months"). Mr. Folsom does not allege that any sexual harassment by Defendant Davis occurred after the alleged incident on November 14, 2012. *See* Am. Compl. at 7-8; Am. Compl. Exs. at 4, 6, 7, 8. And Mr. Folsom presents no factual allegations that Defendant Dowling had any knowledge of Defendant Davis' conduct before December 2012, when Mr. Folsom submitted a grievance to Defendant Dowling describing Defendant Davis' alleged sexual harassment of Mr. Folsom. *See* Am. Compl. at 7-8; Am. Compl. Exs. at 4, 6, 7, 8. Thus, Mr. Folsom has failed to allege sufficient facts to show that Defendant Dowling had knowledge of any alleged ongoing harm to Mr. Folsom caused by Defendant Davis' alleged sexual harassment of Mr. Folsom, as would be required for Defendant Dowling to *knowingly* disregard an excessive risk to Mr. Folsom's health or safety. *See Farmer*, 511 U.S. at 837; *Gonzales*, 403 F.3d at 1186.

In view of this deficiency, among others, Mr. Folsom has not stated a failure-to-protect claim under § 1983 upon which relief can be granted against Defendant Dowling regarding Defendant Davis' alleged conduct. Movants' dispositive motion should be

granted insofar as dismissal of the claim is sought on this basis. *See* Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 678-79; Disp. Mot. 1 at 22-23.

2. <u>Allegations Regarding Job Loss at JCCC</u>

Mr. Folsom alleges, "[W]hen I started the grievance process [regarding Defendant Davis' alleged conduct,] I was instantly fired from my job." *See* Am. Compl. at 2. Mr. Folsom does not further address this issue in his Amended Complaint; however, he attached relevant documentary evidence from the prison grievance process. *See* Am. Compl. Exs. at 9-12. In a November 2012 Request to Staff addressed to a JCCC staff member, Mr. Folsom asks, "Why did I lose my job[?]" *Id.* at 11. In response, the staff member advised Mr. Folsom: "Offenders may be moved at the discretion of staff and you were not fired but requested to get a job change." *Id.* Mr. Folsom then pursued the matter further through a December 2012 Grievance addressed to Defendant Dowling:

> I was fired from laundry in retaliation for starting the Grievance Process against Officer Dan Davis.
>
> . . . .
>
> On 11/30/2012 I spoke to Deputy Warden, Mr. Brooks[,] who told me Internal Affairs ordered me removed from my laundry job.
>
> . . . .
>
> Give me the name of the individual responsible for me being fired from my job so I can sue for retaliatory conduct in federal court.

*Id.* at 9. Defendant Dowling returned the Grievance unanswered, stating incongruously that "[r]equests for disciplinary action against staff will not be addressed in the grievance process." *Id.* Defendant Dowling further instructed Mr. Folsom not to resubmit his Grievance. *Id.*

In his Amended Complaint, Mr. Folsom does not develop a particular claim against a particular Defendant based on the above factual allegations. Mr. Folsom suggests that he was removed from his prison job in retaliation for reporting Defendant Davis' alleged conduct. *See* Am. Compl. at 2. Such retaliatory conduct could give rise to a First Amendment claim but would require Mr. Folsom to present factual allegations that, among other things, identify a defendant who participated in the alleged retaliatory conduct. *See, e.g.*, *Gee*, 627 F.3d at 1189 (citing *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007)); *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991). While Mr. Folsom's exhibits reflect that he attempted to discover information necessary toward establishing a retaliatory motive—i.e., Mr. Folsom attempted to discover the identity of the individual responsible for removing him from his prison job—Mr. Folsom does not discuss these exhibits in his Amended Complaint and, ultimately, Mr. Folsom fails to allege that a named Defendant removed him from the referenced prison job or that such person's motivation was retaliation for constitutionally protected activity rather than any legitimate penological purpose. The Court cannot act as Mr. Folsom's advocate by either supplying additional factual allegations or constructing a legal theory on Mr. Folsom's behalf. *See Whitney*, 113 F.3d at 1173-74.

Having failed to connect the above factual allegations with a defendant, Mr. Folsom has failed to state a claim upon which relief may be granted under § 1983. Any claims arising from those allegations should be dismissed accordingly. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1); 42 U.S.C. § 1997e(c)(1); *Pahls*, 718 F.3d at 1225-28.

### 3. Claims Regarding Disciplinary Action at JCCC

Mr. Folsom alleges that "[Defendant] Grice wrote two misconducts on Mr. Folsom that [were] lies, because Mr. Folsom reported Dan Davis her friend for sexual[] h[a]rassment." Am. Compl. at 6. Mr. Folsom contends that Defendant Grice's conduct "ended up getting Mr. Folsom put in segregation and transfer[r]ed." *Id.* Mr. Folsom further contends that Defendant Grice's conduct "put Mr. Folsom[']s life in danger[.] Mr. Folsom has not been given medical treatment and ended up getting him beat by staff at [LCC]," a separate facility. *Id.* Mr. Folsom separately, but nonspecifically, alleges that Defendant Dowling was involved in the "retaliatory misconducts." *See id.* at 8.

In support of the above allegations, Mr. Folsom attached documentary evidence from the prison disciplinary process and grievance process. *See* Am. Compl. Exs. at 1-2, 13-57. These documents reflect that Mr. Folsom encountered Defendant Grice in JCCC's medical unit on December 24, 2012. *E.g.*, *id.* at 20, 25-30, 34-38, 42-44, 47-49. As discussed separately below, Mr. Folsom alleges that Defendant Grice refused to provide Mr. Folsom with medical care that day because he "got [Defendant Grice's] friend Dan Davis fired." *Id.* at 27; *see also id.* at 20, 35. Mr. Folsom further alleges that, upon returning to the medical unit later that day, Defendant Grice "started yell[ing] at me & I walked off." *Id.* at 27.

According to the disciplinary records, Defendant Grice submitted Incident/Staff Reports and Offense Reports dated January 7, 2013, regarding her December 24, 2012 encounter with Mr. Folsom. *Id.* at 25, 30, 34, 36. Defendant Grice's statements led to Mr. Folsom's immediate placement in segregation and his later disciplinary conviction

for two offenses—battery of a staff member with contact not resulting in physical harm and menacing through threats of bodily harm to a staff member. *See id.* at 23, 42, 47. For each offense, Mr. Folsom was sentenced to 30 days of segregated confinement, as well as a 180-day visiting restriction for the battery offense and a 180-day canteen restriction for the menacing offense. *See id.* at 42, 47. Defendant Dowling affirmed the convictions on appeal. *Id.* at 45-46, 50-51. On further appeal, the conviction for battery was affirmed, but the conviction for menacing was reversed and expunged. *Id.* at 57, 56. Mr. Folsom then sought judicial review of the battery conviction in state court, but the matter was dismissed because Mr. Folsom had not been sanctioned with a loss of earned credits, as is required under state law to be eligible for judicial review. *See Folsom v. Okla. Dep't of Corr.*, No. CV-2013-1200 (Okla. Cnty. Dist. Ct.) (Dec. 11, 2013), http://www.oscn.net/dockets/GetDocument.aspx?ct=oklahoma&bc=1023637577&cn=CV-2013-1200&fmt=pdf; *see also* Pl.'s Notice of Related Case, Doc. No. 42.

Defendant Grice has yet to be served in this lawsuit and, thus, has not responded to Mr. Folsom's claims. *See, e.g.*, Order, Doc. No. 150 (extending deadline for service). Mr. Folsom's factual allegations against Defendant Grice appear to satisfy the elements necessary to state a First Amendment retaliation claim. *See Gee*, 627 F.3d at 1189.

Assuming Mr. Folsom plausibly states a retaliation claim against Defendant Grice, however, Mr. Folsom does not present specific factual allegations showing that Defendant Dowling's role in the above "retaliatory misconducts" violated Mr. Folsom's constitutional or other federal rights, as required to state a claim against Defendant Dowling upon which relief can be granted under § 1983. *See Pahls*, 718 F.3d at 1225-28;

Am. Compl. at 7-8. Absent such alleged facts, any claims under § 1983 against Defendant Dowling involving the disciplinary actions discussed above should be dismissed, and Movants' dispositive motion should be granted to the extent such dismissal is sought. *See* Fed. R. Civ. P. 12(b)(6); *Whitney*, 113 F.3d at 1173-74; Disp. Mot. 1 at 24-25.

    4. <u>Claims Regarding Access to Legal Resources at JCCC</u>

Mr. Folsom alleges that "Defendant Harris would give Mr. Folsom wrong forms and would not give policy and procedure and OPs and laws to Mr. Folsom in segregation that was harassment and retaliation over Mr. Folsom['s] lawsuit on [JCCC] where she works as law library staff." Am. Compl. at 7. Mr. Folsom contends that Defendant Harris' alleged conduct violated Mr. Folsom's "right to Law Library assistance" and "then impeded Mr. Folsom" and prevented Mr. Folsom from exhausting his administrative remedies. Am. Compl. at 6 (citing *Bounds v. Smith*, 430 U.S. 817, 822 (1977); *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996)). In support, Mr. Folsom cites a document dated February 1, 2013, whereby Defendant Dowling returned paperwork to Mr. Folsom due to deficiencies in the appeals of his two disciplinary convictions discussed above. *See* Am. Compl. Exs. at 1, 41. Mr. Folsom suggests that the deficiencies were attributable to Defendant Harris providing improper forms for appeals to Mr. Folsom. *See id.* at 1; *see also* Am. Compl. at 2 ("[Defendant] Harris would not give me all the policy OPs and Laws and Forms so I could appeal the misconduct and Grievances I need in segregation.").

The undersigned first addresses the allegation that Defendant Harris harassed, and retaliated against, Mr. Folsom due to "Mr. Folsom['s] lawsuit on [JCCC]." Am. Compl. at 7. The undersigned assumes that Mr. Folsom refers to the present lawsuit, as Mr. Folsom does not allege that he brought any other lawsuit against JCCC employees. Mr. Folsom commenced this lawsuit in June 2013, after he was no longer incarcerated at JCCC. *See* Pl.'s Mot. Prelim. Inj., Doc. No. 1, at 7 (reflecting that Mr. Folsom was then incarcerated at LCC); *see also* Pl.'s Mot. Leave to Proceed *In Forma Pauperis*, Doc. No. 2, at 3, 5 (same). Mr. Folsom does not allege any interaction with Defendant Harris after Mr. Folsom's transfer away from JCCC. *See* Am. Compl. at 6-7. Mr. Folsom offers no explanation regarding how Defendant Harris' "harassment and retaliation" resulted from a lawsuit that he had yet to file. Accordingly, any claims under § 1983 against Defendant Harris for alleged harassment and retaliation in connection with this lawsuit should be dismissed for failure to state a claim upon which relief can be granted, and Movants' dispositive motion should be granted to the extent such dismissal is sought. *See* Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 678-79; Disp. Mot. 1 at 25.

The undersigned construes Mr. Folsom's remaining allegations against Defendant Harris—regarding her refusal to provide certain legal resources and provision of incorrect forms—as contending that Defendant Harris denied Mr. Folsom's right to access the courts. Prisoners have a "fundamental constitutional right of access to the courts." *Bounds*, 430 U.S. at 828; *see also Lewis*, 518 U.S. at 351-52 (describing right as "meaningful access to the courts" though not imposing specific requirements upon prisons). To state a claim that one's right to court access has been violated, a plaintiff

must first allege facts to establish a nonfrivolous underlying cause of action that he or she was prevented from pursuing based on the defendant's actions.[8]  *Christopher v. Harbury*, 536 U.S. 403, 415-18 (2002).

As noted, Mr. Folsom suggests that the deficiencies identified on February 1, 2013, relating to attempted appeals of his disciplinary convictions were due to Defendant Harris' provision of improper forms.  *See* Am. Compl. Exs. at 1, 41.  However, Mr. Folsom's exhibits reflect that he later resubmitted his appeals, and each was considered on the merits.  *See id.* at 42-46, 47-51, 52-53, 54-56, 57.  As to the disciplinary convictions or any other issue, Mr. Folsom does not allege facts to show that he was prevented from pursuing a nonfrivolous cause of action due to Defendant Harris' alleged conduct.  *See* Am. Compl. at 6-7.  Thus, Mr. Folsom has failed to state a claim upon which relief can be granted under § 1983 against Defendant Harris for a violation of Mr. Folsom's right to access the courts.  *See Harbury*, 536 U.S. at 415-18.  Movants' dispositive motion should be granted to the extent that dismissal is sought on this basis. *See* Fed. R. Civ. P. 12(b)(6); Disp. Mot. 1 at 32-33.

5.  Claims Regarding Segregation at JCCC

Mr. Folsom alleges that he was wrongfully placed "in segregation from around 9-1-12 to . . . around 3-20-13" and vaguely connects the alleged wrongful placement to Defendant Dowling without stating specifically how Defendant Dowling was involved.

---

[8] For the purposes of this brief analysis, the undersigned assumes without deciding that a "backwards looking" access-to-the-courts claim such as Mr. Folsom's would be actionable.  *See*, *e.g.*, *Lynch v. Barrett*, 703 F.3d 1153, 1157, 1161-62 (10th Cir. 2013).

*See* Am. Compl. at 7-8; *see also id.* at 7 (alleging "retaliatory placement in segregation"). In two Requests to Staff addressed to Defendant Dowling, Mr. Folsom mentioned his segregated confinement but did not directly challenge such confinement. *See* Am. Compl. Exs. at 13, 16. Instead, Mr. Folsom focused on alleged factual inconsistencies between a Segregation Review dated January 11, 2013, and the statements provided by Defendant Grice and others that led to Mr. Folsom's disciplinary convictions discussed above. *See id.* at 13, 16, 23. Mr. Folsom raised such inconsistencies in support of his contention that the convictions should be reversed. *See id.* at 13, 16. Defendant Dowling returned the two Requests to Staff unanswered, citing various deficiencies. *See id.* at 13-18.

Mr. Folsom does not directly address these Requests to Staff or their contents in his Amended Complaint. *See* Am. Compl. at 7-8. Further, Mr. Folsom does not present factual allegations to explain how his segregated confinement during early 2013 or at any point within the dates cited ("from around 9-1-12 to . . . around 3-20-13") was "wrongful" or "retaliatory." *See id.* Nor does Mr. Folsom present specific factual allegations regarding how Defendant Dowling participated in such allegedly improper confinement. *See id.*

Again, the Court cannot act as Mr. Folsom's advocate by either supplying additional factual allegations or constructing a legal theory on Mr. Folsom's behalf. *See Whitney*, 113 F.3d at 1173-74. Mr. Folsom's factual allegations are insufficient to establish a causal connection between Defendant Dowling and any improper segregated confinement giving rise to a violation of Mr. Folsom's federal rights. Thus, Mr. Folsom

has failed to state a claim under § 1983 against Defendant Dowling based on Mr. Folsom's segregated confinement. *See Iqbal*, 556 U.S. at 676, 78-79; *Pahls*, 718 F.3d at 1225-28. Movants' dispositive motion should be granted to the extent that dismissal is sought on this basis. *See* Fed. R. Civ. P. 12(b)(6); Disp. Mot. 1 at 24-25.

      6. <u>Claims Regarding Denial of Medical Care at JCCC</u>

Mr. Folsom alleges that Defendant Grice "did den[y] Mr. Folsom medical treatment." Am. Compl. at 5; *see also id.* at 6. Mr. Folsom does not, however, present any factual allegations regarding this alleged conduct in the Amended Complaint itself. *See id.* at 5-6. As noted above, however, when defending against disciplinary charges stemming from a December 24, 2012 encounter with Defendant Grice, Mr. Folsom stated that Defendant Grice had refused to provide Mr. Folsom with medical care that day. Am. Compl. Exs. at 26-27. Specifically, Mr. Folsom alleged that after he fell in an unspecified manner, he visited the medical unit to request "some pain pills & a wrap" from Defendant Grice, who denied the request because Mr. Folsom "got [Defendant Grice's] friend Dan Davis fired." *Id.* Mr. Folsom alleges that he returned to the medical unit later that day "for [his] pills & a sick call slip" but "walked off" after Defendant Grice "started yell[ing] at [him]." *Id.* at 27.

For a denial of medical care to result in a constitutional violation—i.e., a violation of a convicted prisoner's Eighth Amendment right to be free from cruel and unusual punishment—a plaintiff-prisoner must allege sufficient facts to show that the defendant acted with deliberate indifference to a serious medical need, requiring the plaintiff to satisfy both an objective and a subjective component. *See Estelle v. Gamble*, 429 U.S.

97, 104 (1976); *Mata v. Saiz*, 427 F.3d 745, 753-55 (10th Cir. 2005). Here, Mr. Folsom does not satisfy either component.

As to the objective component, Mr. Folsom has presented insufficient factual allegations to show a serious medical need, which requires a showing of "substantial" harm. *See Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014); *see also Sealock*, 218 F.3d at 1210 ("[N]ot every twinge of pain suffered as the result of delay in medical care is actionable."); *Mata*, 427 F.3d at 753 (reiterating requirement for "significant, as opposed to trivial, suffering"). From Mr. Folsom's allegations that he "fe[l]l down" and thereafter sought "some pain pills & a wrap," Am. Compl. Exs. at 26-27, one cannot reasonably infer that Mr. Folsom experienced substantial harm—either before or after the alleged denial of medical care.

As to the subjective component, Mr. Folsom has presented insufficient factual allegations to show that Defendant Grice "acted or failed to act despite [her] knowledge of a substantial risk of serious harm." *See Farmer*, 511 U.S. at 842. Mr. Folsom alleges that he told Defendant Grice that he "fe[l]l down" and "need[ed] some pain pills & a wrap." Am. Compl. Exs. at 26. Although one could reasonably infer that Mr. Folsom was experiencing some degree of pain based upon his request for "pain pills," Mr. Folsom provides no detail regarding that or any other symptom presented to Defendant Grice. *See id.* at 26-27. Without factual allegations regarding the symptoms that Mr. Folsom presented to Defendant Grice, the Court cannot consider whether Defendant Grice knew of any risk of substantial harm to Mr. Folsom "and chose (recklessly) to

disregard it," as would be required for a violation of Mr. Folsom's Eighth Amendment rights.  *See Mata*, 427 F.3d at 753.

For these reasons, Mr. Folsom has presented insufficient factual allegations to show that Defendant Grice exhibited deliberate indifference to a serious medical need in violation of Mr. Folsom's Eighth Amendment rights.  Mr. Folsom has failed to state a claim under § 1983 upon which relief may be granted against Defendant Grice, and his claim should be dismissed accordingly.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1); 42 U.S.C. § 1997e(c)(1); *Iqbal*, 556 U.S. at 678-79.

### 7.  Claims Regarding Retaliatory Transfer from JCCC to OSR

Mr. Folsom alleges, "to retaliat[e] and harass me even more [Defendant] Dowling shipped me to [OSR] where my life was in danger."  Am. Compl. at 2; *see also id.* at 8 (alleging "unlawful transfer that was life [e]ndangerment").  In neither the Amended Complaint nor its Exhibits does Mr. Folsom elaborate on this allegation.

As to Mr. Folsom's allegation of an "unlawful transfer," Am. Compl. at 8, a prisoner "'enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to such a transfer'"; however, the prisoner may not be transferred in retaliation for exercising constitutional rights.  *See Gee*, 627 F.3d at 1189 (quoting *Frazier v. Dubois*, 922 F.2d 560, 561-62 (10th Cir. 1990)).  "An inmate claiming retaliation must 'allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights.'"  *Peterson v. Shanks*, 149 F.3d 1140, 1144 (1990) (quoting *Frazier,* 922 F.2d at 562 n.1).  Mr. Folsom's conclusory statement

that his transfer was motivated by retaliation is not a substitute for factual allegations that would plausibly support that assertion. *See* Am. Compl. at 2, 7-8.

By contending that Defendant Dowling transferred Mr. Folsom to OSR where his "life was in danger," Am. Compl. at 2, Mr. Folsom suggests that Defendant Dowling exhibited deliberate indifference to Mr. Folsom's health and safety, in violation of Mr. Folsom's Eighth Amendment rights. Among other things, facts reflecting the defendant's knowledge of an "excessive risk to inmate health or safety" must be alleged to satisfy the subjective component of such an Eighth Amendment claim. *See Farmer*, 511 U.S. at 834-37 (requiring plaintiff to establish that defendant knew of and disregarded such risk); *see also DeSpain v. Uphoff*, 264 F.3d 965, 971-72 (10th Cir. 2001). Mr. Folsom presents no factual allegations that Defendant Dowling had knowledge of *any* risk to Mr. Folsom's health or safety at OSR. *See id.* at 2, 7-8.[9]

Mr. Folsom has alleged insufficient facts to state a claim under § 1983 against Defendant Dowling upon which relief can be granted, either for retaliation or for deliberate indifference to health and safety, with regards to Mr. Folsom's transfer to OSR. Movants' dispositive motion should be granted to the extent that dismissal is sought on this basis. *See* Fed. R. Civ. P. 12(b)(6); Disp. Mot. 1 at 29.

---

[9] Mr. Folsom asserts that Defendant Dowling "transferr[ed] a mentally disturbed inmate to an over crowded population with no psychiatric care where Folsom ended up in the hospita[l] over mental or emotional injury over sexual harassment and retaliatory misconducts." Am. Compl. at 7 (citation omitted). Mr. Folsom does not allege facts to show that Defendant Dowling had any knowledge of these vaguely described conditions at OSR before transferring Mr. Folsom there. *See id.* at 2, 7-8.

8. Claims Regarding Other Allegations at JCCC

Mr. Folsom presents a string of additional conclusory allegations against Defendants Davis, Grice, Harris, and Dowling, which are interspersed with citations to various legal authority but lack any factual support. *See* Am. Compl. at 5-8. To the extent that Mr. Folsom intended to bring claims not discussed above against these Defendants, his bare legal conclusions are insufficient to state a claim upon which relief may be granted, and any such claims should be dismissed accordingly. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1); Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 678-79.

9. Claims Regarding Access to Legal Resources at OSR

Among other allegations discussed below, Mr. Folsom vaguely asserts that Defendants McCollum and Knutson were involved in difficulties that Mr. Folsom encountered in accessing legal resources at OSR. *See* Am. Compl. at 2, 8; Am. Compl. Exs. at 2, 59-63, 64-70. Mr. Folsom asserts that the "OSR library would not give me [the] right forms, OPs, rules[,] and laws," thereby causing various grievance appeal documents to be returned by Defendant Knutson to Mr. Folsom due to alleged deficiencies. *See* Am. Compl. Exs. at 2 (citing *id.* at 59-63, 64-70). Mr. Folsom also suggests that he was impeded from properly pursuing administrative remedies regarding his issues with OSR's library staff because he lacked access to the policies that set forth the procedures for such remedies. *See id.* at 2.

Mr. Folsom's allegations that he experienced difficulties in obtaining legal resources and in pursuing administrative remedies indicate, if anything, that Mr. Folsom

is asserting a claim of violation of his right to access the courts.[10] As noted above, such a claim requires a plaintiff to allege facts establishing a nonfrivolous underlying cause of action that he or she was prevented from pursuing based on the defendant's actions. *Harbury*, 536 U.S. at 415-18. Mr. Folsom fails to allege such facts and, thus, has failed to state a claim upon which relief can be granted under § 1983 that his right to access the courts was violated by Defendants McCollum and Knutson. Movants' dispositive motion should be granted to the extent that dismissal is sought on this basis. *See* Fed. R. Civ. P. 12(b)(6); Disp. Mot. 1 at 33, 40-41.

10. Claims Regarding Medical Care at OSR

In his allegations against Defendant McCollum, Mr. Folsom states that he was denied "medical treatment [until he] stopped eat[ing] and lost over 100 lb[s.] and ended up in the hospita[l]." Am. Compl. at 8. It is unclear whether Defendant McCollum is alleged to have directly denied medical care or "let his staff" do so. *See id.* Mr. Folsom also alleges that Defendant McCollum "transfer[r]ed a mentally disturbed inmate/offender to an over crowded population with no psychiatric care," presumably

---

[10] To the extent that Mr. Folsom asserts that a failure of the grievance process itself violated his constitutional rights, the Tenth Circuit has held, in unpublished decisions cited here for their persuasive value, that "there is no independent constitutional right to state administrative grievance procedures. Nor does the state's voluntary provision of an administrative grievance process create a liberty interest in that process." *Boyd v. Werholtz*, 443 F. App'x 331, 332 & n.1 (10th Cir. 2011) (citation omitted) (affirming dismissal for failure to state a claim upon which relief may be granted when prisoner plaintiff alleged deprivation of prison grievance process); *see also Spry v. McKune*, 479 F. App'x 180, 181 (10th Cir. 2012) (same). Thus, the undersigned considers Mr. Folsom's claims regarding access to legal resources at OSR strictly as access-to-the-courts claims.

referring to himself as the transferee. *See id.* Such sparse factual allegations are insufficient to show either that Mr. Folsom had a serious medical need or that Defendant McCollum knowingly disregarded a substantial risk of serious harm to Mr. Folsom—both of which would be required to show that a denial of medical care violated Mr. Folsom's Eighth Amendment right to be free from cruel and unusual punishment. *See Farmer*, 511 U.S. at 842; *Estelle*, 429 U.S. at 104; *Mata*, 427 F.3d at 753-55.

11. Claims Regarding Other Allegations at OSR

Mr. Folsom presents a string of additional, conclusory allegations against Defendant McCollum, which are interspersed with citations to various legal authority but which lack any factual support. *See* Am. Compl. at 8. To the extent that Mr. Folsom intended to bring claims not discussed above against Defendant McCollum, Mr. Folsom's bare legal conclusions are insufficient to state a claim upon which relief may be granted, and any such claims should be dismissed accordingly. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1); Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 678-79.

12. Claims Regarding Abuse at LCC

Mr. Folsom alleges that Defendants McDougal and Lee "beat and abused" him, as well as "verbally abus[]ed" him at LCC. *See* Am. Compl. at 8-10. Mr. Folsom further alleges that Defendant Francis "verbally abus[]ed Mr. Folsom[,] started to beat Mr. Folsom in his office[,] then had his staff take Mr. Folsom to intake and beat on [Mr.] Folsom," further asserting that Defendant Francis "fail[ed] to intervene when other staff was beating on Mr. Folsom." *Id.* at 10. Finally, Mr. Folsom alleges that Defendant Farris "fail[ed] to intervene when his staff beat on Mr. Folsom" and "let staff punch[] a

handcuffed inmate." *Id.* at 11; *see also id.* (alleging "Defendant Farris let his staff verbally abus[]e and beat and humiliate Mr. Folsom").

Mr. Folsom states that the alleged abuse at LCC occurred on July 19, 2013. *See id.* at 3, 10. On that date, Mr. Folsom was accused of making "sexual threats of bodily harm toward a staff member," leading to Mr. Folsom's placement in segregation and later conviction for the alleged offense of menacing. *See* Am. Compl. Exs. at 72, 75, 86. In a five-page statement regarding the alleged offense, Mr. Folsom mentions that he was "taken to intake" on July 19, 2013, "where staff had th[eir] way with [him]." *Id.* at 81. *But see id.* at 82 (discussing events of July 19, 2013, with no reference to any physical altercation). Mr. Folsom does not otherwise provide details regarding any alleged abuse by staff at LCC, either in his Amended Complaint or its Exhibits.

As an initial matter, verbal abuse is generally insufficient to violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment. *See, e.g.*, *Rivera v. Hassler*, 79 F. App'x 392, 394 (10th Cir. 2003); *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001); *Banks v. Katzenmeyer*, No. 13-cv-02599-KLM, 2015 WL 1004298, at *16 (D. Colo. Mar. 4, 2015) (collecting cases); *see also Austin*, 367 F.3d at 1171. Mr. Folsom's simple assertion that he was "verbally abus[]ed" presents no basis for an exception to this general rule, particularly as Mr. Folsom provides no specific statements by any Defendant for the Court to consider.

As to Mr. Folsom's allegations that Defendants McDougal, Lee, Francis, and Farris either "beat" Mr. Folsom or failed to intervene in such beatings, an allegation of physical force is not enough to plausibly state a claim. The existence of a constitutional

claim in such context depends upon the circumstances leading to the allegedly unconstitutional conduct and the details of the force used. "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment's] Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Factors considered in this inquiry can include the extent of the inmate's injury, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* at 7 (quoting *Whitley*, 475 U.S. at 321). Mr. Folsom's sparse statements—that he was "beat[en] and abused" and possibly "punch[ed]" while handcuffed, *see* Am. Compl. at 8-11—are insufficient to plausibly show that any allegedly involved Defendant acted "maliciously and sadistically to cause harm" to Mr. Folsom, *see Hudson*, 503 U.S. at 7.

Further, Mr. Folsom's allegations that Defendants Francis and Farris failed to intervene in the alleged abuse are also otherwise deficient. As noted above, the failure to protect a prisoner from harm can, in certain circumstances, violate the prisoner's Eighth Amendment right to be free from cruel and unusual punishment, if the prisoner shows that the defendant knowingly "disregard[ed] an excessive risk to inmate health and safety." *See Farmer*, 511 U.S. at 834, 837. Mr. Folsom presents insufficient factual allegations to plausibly show, among other things, the requisite excessive risk and Defendants Francis and Farris' knowledge of such risk. *See* Am. Compl. at 10-11.

In sum, Mr. Folsom has failed to state a claim under § 1983 upon which relief may be granted regarding any alleged abuse at LCC, and such claims should be dismissed accordingly, to the extent such dismissal is sought in Movants' dispositive motion and in all other respects under the Court's independent screening obligation. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1); Fed. R. Civ. P. 12(b)(6); Disp. Mot. 1 at 23-24.

13. Claims Regarding Placement in Segregated Confinement at LCC

Mr. Folsom alleges that "[Defendant] McDougal wrote Mr. Folsom a misconduct without any evidence that became retaliatory placement in segregation." Am. Compl. at 9 (alleging also a lack of "good evidence"). Mr. Folsom further alleges that Defendant Lee was also involved in the "retaliatory placement in segregation." *Id.* at 9-10. Mr. Folsom asserts that the misconduct and segregation, as well as a subsequent transfer away from LCC, were "in retaliation over the sexual[] harassment case," presumably referring to Mr. Folsom's allegations against Defendant Davis at JCCC. *See id.* at 2, 8-10. Mr. Folsom nominally asserts that Defendants Francis and Farris were involved in the allegedly retaliatory conduct. *See id.* at 4, 10-11.

Mr. Folsom does not present specific factual allegations from which one could reasonably infer that the alleged actions affecting Mr. Folsom were orchestrated by Defendants McDougal, Lee, Francis, and Farris in retaliation for Mr. Folsom exercising a constitutional right, as generally would be required to state a claim under § 1983 for retaliation. *See Gee*, 627 F.3d at 1189. Mr. Folsom offers no factual basis for his belief that the alleged circumstances at LCC were specifically *because of* his reporting of sexual

harassment at JCCC.  *See Peterson*, 149 F.3d at 1144.  Thus, Mr. Folsom fails to state a retaliation claim under § 1983 upon which relief can be granted against those Defendants. *See Gee*, 627 F.3d at 1189; *Peterson*, 149 F.3d at 1144.  Such claims should be dismissed to the extent such dismissal is sought in Movants' dispositive motion and in all other respects under the Court's independent screening obligation.  *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1); Fed. R. Civ. P. 12(b)(6); Disp. Mot. 1 at 26-28, 30.

14. Claims Regarding Medical Treatment at LCC

In his allegations against Defendants McDougal, Francis, and Farris, Mr. Folsom makes vague references to alleged medical care inadequacies either at LCC or at a subsequent facility to which he was transferred.  *See* Am. Compl. at 9, 10, 11.  In documents from the prison grievance process at LCC, Mr. Folsom asserts that he "should be getting medical mental health counseling" based upon the alleged sexual harassment at JCCC and that "[you all] keep taking me off the medications that work and put me on things that don't."  Am. Compl. Exs. at 137, 139, 140, 142, 145.  Mr. Folsom does not, however, describe any specific symptoms or otherwise elaborate on his alleged circumstances, and none of the documents contains any reference to a Defendant. *See id.* at 137-39, 140-42, 145-47.

Mr. Folsom has failed to allege sufficient facts from which one could reasonably infer that any alleged medical care inadequacies violated Mr. Folsom's Eighth Amendment right to be free from cruel and unusual punishment.  Mr. Folsom presents no factual allegations to suggest, as to the objective component of such a claim, that a

serious medical need existed or, as to the subjective component, that any Defendant

knowingly and recklessly disregarded a substantial risk of serious harm to Mr. Folsom.

*See* Am. Compl. at 9, 10, 11; Am. Compl. Exs. at 137-39, 140-42, 145-47.  Thus, to the

extent such a claim is alleged, Mr. Folsom has failed to state a claim under § 1983 upon

which relief can be granted against Defendant McDougal, Francis, or Farris, or any other

Defendant, regarding Mr. Folsom's medical care at LCC.  *See Farmer*, 511 U.S. at 842;

*Estelle*, 429 U.S. at 104; *Mata*, 427 F.3d at 753-55.  Such claims should be dismissed

accordingly—both to the extent such dismissal is sought in Movants' dispositive motion

and otherwise under the Court's independent screening obligation.  *See* 28 U.S.C.

§§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1); Fed. R. Civ. P. 12(b)(6); Disp.

Mot. 1 at 36-37.[11]

15. Claims Regarding Conditions in Segregated Confinement at LCC

Mr. Folsom alleges that conditions in segregated confinement at LCC violated his

Eighth Amendment right to be free from cruel and unusual punishment.  Am. Compl. at

---

[11] Mr. Folsom presents some of his allegations in the present tense, e.g., asserting that he was "transfer[re]d to another yard where he is not getting medical or . . . psychological counsel[]ing [due] to overcrowded general population."  Am. Compl. at 9; *see also id.* at 10 (asserting that after "transfer[] to a much harder confinement," he "is not getting the right psychiatric care").  At the time Mr. Folsom filed his Amended Complaint, he was incarcerated at DCF but did not name any of its employees as Defendants in this action. *See id.* at 1-2, 3-4.  Aside from failing to provide sufficient factual allegations to plausibly claim an ongoing Eighth Amendment violation, Mr. Folsom has since been transferred from DCF and is currently incarcerated at Joseph Harp Correctional Center. *See* Pl.'s Notice of Change of Address, Doc. No. 100; Am. Compl. Exs. at 138.  Thus, the undersigned concludes that any claim alleging an *ongoing* violation of Mr. Folsom's federal rights with regards to his medical care is now moot, depriving the Court of subject-matter jurisdiction and requiring dismissal accordingly.  *See* Fed. R. Civ. P. 12(h)(3); *Jordan v. Sosa*, 654 F.3d 1012, 1023, 1027-28 (10th Cir. 2011).

9-11; *see also* Am. Compl. Exs. at 113 (reflecting that segregated confinement at LCC began on July 19, 2013), 138 (reflecting that Mr. Folsom was transferred to DCF on August 21, 2013).  Mr. Folsom asserts that Defendant Lee "had Mr. Folsom put in segregation and not given any hygiene for six days[,] no clean clothing or bedding," and that Mr. Folsom "could not go outside most [of] the time and no lights in the cells and the living conditions w[]ere very bad."  Am. Compl. at 10.  Mr. Folsom also asserts that Defendant Francis was connected with Mr. Folsom's placement in segregation, but Defendant Francis' alleged role is unclear: "Mr. Francis on 7-9-13 verbally abus[]ed Mr. Folsom[,] started to beat Mr. Folsom in his office[,] then had his staff take Mr. Folsom to intake and beat on [Mr.] Folsom.  Then locked in segregation where Mr. Folsom was treated even more bad[ly] by the living conditions."  Am. Compl. at 10.  Finally, Mr. Folsom asserts that Defendant Farris "let his staff . . . mistreat Mr. Folsom in segregation."  Am. Compl. at 11.

In support of the above allegations, Mr. Folsom attached documents from the prison grievance process.  Mr. Folsom addressed multiple sensitive grievances dated August 8, 2013, to Defendant Farris.  Am. Compl. Exs. at 105, 109, 113, 117, 121, 125, 129, 133.  In the grievances, Mr. Folsom alleged that he (1) was unable to "get clean clothing as of 7-19-13 to 8-8-13"; (2) "had to go 6 days without person[al] hygiene . . . from 7-19-13 to 7-24-13 and still [was] not getting all the hygiene [h]e should get"; (3) had "no day time rec." "in the sun" but "only rec. at night time after 10 pm when we are asleep"; (4) "had no real vent[ilation] in [the segregated confinement] cells," causing him to "hav[e] a hard time breathing" due to it being "so hot"; (5) had "no lights in the cells";

(6) had "asbest[]os all over the floors"; (7) believed that placing padlocks on the doors in segregated confinement improperly limited means of fire egress; and (8) had "tr[i]ed to talk to IA/DA/Judge over HATE CRIMES being done on [him] at LCC/LARC by staff." *Id.* In each grievance, Mr. Folsom also stated that he had been unable to obtain a Request to Staff, asserting that staff members named Whomble and Elderman and other unnamed "unit staff" would not come to Mr. Folsom's cell. *See id.* Mr. Folsom also asserted his belief that each issue was "sen[si]tive anyway." *Id.*

On forms dated August 29, 2013—i.e., after Mr. Folsom's transfer to DCF—each grievance was returned to Mr. Folsom unanswered by Amanda Webb, Warden's Assistant, because no issue was "of a sensitive/emergency nature," among other reasons, and Mr. Folsom was instructed to "follow the standard grievance process." *Id.* at 106, 110, 114, 118, 122, 126, 130, 134. Mr. Folsom appealed each returned grievance but was advised by Defendant Knutson that the appeals were improperly submitted because no issue was "of a sensitive/emergency nature," among other reasons, and Mr. Folsom was again instructed to "follow the standard grievance process." *Id.* at 107-08, 111-12, 115-16, 119-20, 123-24, 127-28, 131-32, 135-36.

The Eighth Amendment imposes duties on prison officials to "provide humane conditions of confinement . . . [by] ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care" and "tak[ing] reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (internal quotation marks omitted); *see also Rhodes v. Chapman*, 452 U.S. 337, 344-45 (1981) (noting applicability of Eighth Amendment to states through Fourteenth Amendment). Comfortable prisons, however,

are not mandated by the Constitution; conditions may be harsh. *Farmer*, 511 U.S. at 832-33; *Rhodes*, 452 U.S. at 347, 349. As with other Eighth Amendment claims, to state a claim upon which relief can be granted under § 1983, a prisoner-plaintiff must initially allege sufficient facts to establish an objective component and a subjective component.

As to the objective component, the plaintiff must allege facts to show that the condition was "'sufficiently serious' to implicate constitutional rights"—one that objectively "'pos[ed] a substantial risk of serious harm' to inmate health or safety." *DeSpain*, 264 F.3d at 971, 973 (quoting *Farmer*, 511 U.S. at 834). As to the subjective component, the plaintiff must allege facts to show that the defendant exhibited deliberate indifference to this risk, i.e., that the defendant knew of and disregarded the "excessive risk to inmate health or safety." *See Farmer*, 511 U.S. at 834-37; *see also DeSpain*, 264 F.3d at 971-72.

Mr. Folsom asserts that Defendant Lee "had Mr. Folsom put in segregation and not given any hygiene for six days[,] no clean clothing or bedding," and that Mr. Folsom "could not go outside most [of] the time and no lights in the cells and the living conditions w[]ere very bad." Am. Compl. at 10. These assertions, however, fail to adequately explain how Defendant Lee knew of any excessive risk to Mr. Folsom's health or safety caused by such deprivations, and Mr. Folsom's grievance documents reflect no mention of Defendant Lee or his alleged involvement. *See* Am. Compl. at 10; Am. Compl. Exs. at 105, 107, 109, 111, 113, 115, 117, 119, 121, 123, 125, 127, 129, 131, 133, 135; *see also Gee*, 627 F.3d at 1184-85; 1191-92 (discussing importance of detail and context in conditions-of-confinement claim).

Mr. Folsom fails to explain how Defendant Francis was personally involved, through either direct action or indirect action as a supervisor, and does not mention Defendant Francis in his grievances as to the challenged conditions. *See* Am. Compl. at 10; Am. Compl. Exs. at 105, 107, 109, 111, 113, 115, 117, 119, 121, 123, 125, 127, 129, 131, 133, 135.

Further, although Mr. Folsom addressed his grievances to Defendant Farris, who "let his staff . . . mistreat Mr. Folsom in segregation," *see* Am. Compl. at 11, another staff member, Ms. Webb, returned the grievances to Mr. Folsom unanswered. *See* Am. Compl. Exs. at 105-06, 109-110, 113-14, 117-18, 121-22, 125-26, 129-30, 133-34. Neither Mr. Folsom's factual allegations nor his supporting documentation supports a reasonable inference that Defendant Farris had any knowledge of the challenged conditions, either from grievances or otherwise. *See id.* at 105-136. Thus, one cannot reasonably conclude that Defendant Farris knowingly disregarded an excessive risk to Mr. Folsom's health or safety.

Finally, to the extent that Defendant Knutson is alleged to have known of the challenged conditions, such knowledge could not have been gained by Defendant Knutson while Mr. Folsom was still detained in those conditions, and, thus, Defendant Knutson cannot be alleged to have knowingly disregarded an excessive risk to Mr. Folsom's health or safety. Mr. Folsom did not submit his allegations regarding the conditions to Defendant Knutson until after Mr. Folsom had been transferred to another facility and away from the allegedly unconstitutional conditions. *See* Am. Compl. Exs. at 107, 111, 115, 119, 123, 127, 131, 135, 138.

Having failed to allege sufficient facts to satisfy the subjective component of an Eighth Amendment claim against any Defendant regarding Mr. Folsom's conditions of confinement in segregation at LCC, Mr. Folsom has failed to state a claim upon which relief may be granted under § 1983. *See Farmer*, 511 U.S. at 834-37; *DeSpain*, 264 F.3d at 971-73. Such claims should be dismissed accordingly. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1).

    16. Claims Regarding Access to Legal Resources at LCC

Mr. Folsom alleges that Defendant Farris "would not let Mr. Folsom exhaust administrative remedies and deni[ed] . . . law library access." Am. Compl. at 11. Mr. Folsom does not elaborate on this claim in his Amended Complaint but attached documentary evidence from the prison grievance process in which he alleges difficulties in obtaining legal resources or in communicating with law library staff. *See id.*; Am. Compl. Exs. at 90-104; *see also* Am. Compl. Exs. at 88-89. Mr. Folsom also sought to confirm that the appeal of a disciplinary conviction had been received by Defendant Farris. Am. Compl. Exs. at 90. In response, Ms. Webb twice confirmed receipt of the appeal and notified Mr. Folsom that he would receive a rehearing on the matter. *See id.* at 90-91. Mr. Folsom provides no further information regarding the ultimate outcome as to the disciplinary conviction.

The undersigned construes Mr. Folsom's allegations above as asserting a violation of his right to access the courts. *See supra* note 10. As with other such alleged violations, Mr. Folsom has failed to allege facts to show that he was prevented from pursuing a nonfrivolous cause of action due to any alleged conduct by Defendant Farris.

*See* Am. Compl. at 11; Am. Compl. Exs. at 88-104.  Thus, Mr. Folsom has failed to state a claim upon which relief can be granted under § 1983 against Defendant Farris for a violation of Mr. Folsom's right to access the courts.  *See Harbury*, 536 U.S. at 415-18. Movants' dispositive motion should be granted to the extent that dismissal is sought on this basis.  *See* Fed. R. Civ. P. 12(b)(6); Disp. Mot. 1 at 33-34.

17. Claims Regarding Other Allegations at LCC

Mr. Folsom presents a string of additional, conclusory allegations against Defendants McDougal, Lee, Francis, and Farris, which are interspersed with citations to various legal authority but which lack any factual support.  *See* Am. Compl. at 8-11.  To the extent that Mr. Folsom intended to bring claims not discussed above against these Defendants, his bare legal conclusions are insufficient to state a claim upon which relief may be granted, and any such claims should be dismissed accordingly.  *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1); Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 678-79.

18. Claims Against Defendant Knutson

Aside from other allegations involving Defendant Knutson and addressed above, Mr. Folsom alleges that he "sent misconduct appeals and grievance appeals to [Defendant] Knutson" who was "not doing hearing[s] on misconduct and grievances right and fair."  Am. Compl. at 12.  Mr. Folsom further alleges:

> Mr. Knutson let [JCCC], OSR . . . and [LCC] violate all [of] Mr.
> Folsom['s] constitutional rights[,] privileges and immunities to . . . fair
> hearings on appeals from 12-25-12 to 9-27-13[.]  Mark Knutson let false
> charges as of misconducts in prison discipline deprive Mr. Folsom, let

> sexual harassment and harassment go on. When it[']s his job to stop it as
> Director['s] Designee.

*Id.*; *see also id.* at 2 (alleging that Defendant Knutson "retaliat[ed] and h[a]rassed me on

the misconducts and Offender Grievance Process").

These allegations against Defendant Knutson "are no more than conclusions." *See*

*Iqbal*, 556 U.S. at 678-79. Mr. Folsom presents no factual support for those conclusions

in his Amended Complaint and describes no such support in his Exhibits. Without

factual support, Mr. Folsom's conclusory allegations "are not entitled to the assumption

of truth" and should be dismissed accordingly for failure to state a claim upon which

relief may be granted. *See Iqbal*, 556 U.S. at 678-79; *see also* 28 U.S.C.

§§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1); Fed. R. Civ. P. 12(b)(6); Disp.

Mot. 1 at 40-41.

19. Claims of Fourteenth Amendment Violations

In addition to alleging that each Defendant violated, among other things, Mr.

Folsom's Eighth Amendment right to be free from cruel and unusual punishment, Mr.

Folsom alleges that each Defendant violated his "[Fourteenth] Amendment right under

life and equal protection from cruel harassment and retaliation." *See* Am. Compl. at 5-

12. But Mr. Folsom presents no factual allegations in support of any such Fourteenth

Amendment claims, *see id.*,[12] and thus the undersigned has evaluated each of Mr.

---

[12] Stating an equal protection claim, for instance, requires factual allegations that show
disparate treatment among similarly situated persons, an impermissible burden upon a
fundamental interest, or targeting of a suspect class. *See Romer v. Evans*, 517 U.S. 620,
631 (1996); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Mr.

Folsom's claims under the Eighth Amendment or other appropriate constitutional provision.

20. Conclusion

In sum, the undersigned finds that, with the exception of an individual-capacity claim under § 1983 against Defendant Grice for retaliation involving misconducts at JCCC, the individual-capacity claims in the Amended Complaint should be dismissed for failure to state a claim upon which relief may be granted.

*C. Whether Dismissal is Required as a Result of Moving Defendants' Defense of Qualified Immunity*

Defendants Knutson, Dowling, Davis, Harris, McCollum, McDougal, Lee, and Farris assert that the claims against them should be dismissed as a result of their qualified immunity. *See* Disp. Mot. 1 at 50-52; Disp. Mot. 2 at 13-14. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant has moved to dismiss on the ground of qualified immunity, the Court must consider whether: (1) the plaintiff has alleged sufficient facts to "make out a violation of a constitutional right"; and (2) "the right at issue was 'clearly established' at the time of defendant's alleged

---

Folsom describes only his own circumstances, never identifying any similarly situated persons. *See* Am. Compl. at 2, 5-12. Mr. Folsom's allegations do not plausibly suggest that Defendants' actions impermissibly burdened a fundamental interest or targeted a suspect class. *See id.* Nor does Mr. Folsom allege that he is a member of a suspect class. *See id.*

misconduct." *Pearson*, 555 U.S. at 232 (citations omitted); *Brown v. Montoya*, 662 F.3d 1152, 1162-64 (10th Cir. 2011). Either prong of the inquiry may be considered first. *See Pearson*, 555 U.S. at 236; *Brown*, 662 F.3d at 1164.

As detailed above, the undersigned has found that Mr. Folsom has not, insofar as his claims against Defendants Knutson, Dowling, Davis, Harris, McCollum, McDougal, Lee, and Farris, alleged sufficient facts to plausibly show that their conduct violated his constitutional rights. As a result, those Defendants would also be entitled to qualified immunity, and to that extent their dispositive motions should be granted.

> D. *Whether Dismissal is Required as a Result of Moving Defendants' Defense of Nonexhaustion of Administrative Remedies*

Defendants Knutson, Dowling, Davis, Harris, McCollum, McDougal, Lee, and Farris contend that they are entitled to dismissal based upon Mr. Folsom's failure to exhaust his available administrative remedies. *See* Disp. Mot. 1 at 41-46; Disp. Mot. 2 at 10-13; *see also* 42 U.S.C. § 1997e(a). Because nonexhaustion of administrative remedies is an affirmative defense, a prisoner-plaintiff is not required to affirmatively plead his or her exhaustion of available administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus, a Court may only dismiss a claim based on that defense when the failure to exhaust appears clear from the pleading. *See Jones*, 549 U.S. at 215-16; *Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007).

Movants have failed to satisfy their burden as to this affirmative defense, and their requests for dismissal on this basis should be denied. For instance, Defendant Davis

contends that Mr. Folsom has not exhausted his administrative remedies regarding the claim against Defendant Davis as follows:

> Rather than raise a request for monetary damages [during his efforts to exhaust administrative remedies], Plaintiff raised a grievance that resembled a request for injunctive relief against Defendant Davis. Plaintiff cannot now claim that the grievance was somehow a request for monetary compensation, especially when Plaintiff failed to make any such request at any level of the grievance procedure. Plaintiff's claim for monetary damages is therefore unexhausted, and should be dismissed.

Disp. Mot. 2 at 13. The Tenth Circuit has previously rejected the argument that a prisoner-plaintiff's claim was "unexhausted because he did not request monetary damages during the grievance process," noting that "'one exhausts processes, not forms of relief.'" *Howard v. Waide*, 534 F.3d 1227, 1244 n.9 (10th Cir. 2008) (quoting *Booth v. Churner*, 532 U.S. 731, 739 (2001)); *accord Lemmons v. Houston*, No. CIV-13-494-D, 2015 WL 1498802, at *8 n.9 (W.D. Okla. Mar. 31, 2015).

Defendant Dowling acknowledges that Mr. Folsom was advised by ODOC that he had exhausted the claim involving Defendant Davis but argues that "[n]owhere in that claim did Plaintiff grieve any retaliatory events." Disp. Mot. 1 at 44. This assertion, however, is not clearly related to Mr. Folsom's allegations against her in the Amended Complaint—that she "knew about the sexual harassment and did not stop it," Am. Compl. at 7. Thus, Defendant Dowling has not shown that her nonexhaustion defense is clear from the pleading.

As to their other arguments that Mr. Folsom has failed to exhaust his administrative remedies, Movants routinely indicate that a failure occurred because "Plaintiff did not appeal." Disp. Mot. 1 at 44-45. However, Movants cite no source for

this alleged failure and cannot definitively establish this contention based on the pleadings alone, which do not directly address the appeal process in those instances other than to assert generally that available remedies were exhausted. *See* Disp. Mot. 1 at 44-46; Am. Compl. at 14.

At a minimum, Mr. Folsom's allegations and exhibits indicate that he has adequately pled exhaustion, or a basis for excusal therefrom, as to each of his legal claims, and Movants' arguments to the contrary cannot be resolved on a motion to dismiss. *Cf. Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (emphasizing that "that district courts are 'obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials' before dismissing a claim for failure to exhaust" (quoting *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)). Because Movants cannot establish this affirmative defense from the pleadings, their dispositive motions should be denied to the extent that dismissal of the Amended Complaint is sought based on Mr. Folsom's alleged failure to exhaust his administrative remedies.

### E. *Whether the Court Should Grant Plaintiff's Other Requests for Relief*

#### 1. Plaintiff's Requests to Amend His Pleading (Doc. Nos. 133, 139, 146, 157)

##### a. Doc. No. 133

In an unsworn response to Defendant Davis' dispositive motion, Mr. Folsom asserts additional factual allegations against Defendant Davis and suggests that such factual allegations would cure deficiencies in his Amended Complaint. *See* Pl.'s Resp. to

Disp. Mot. 2, Doc. No. 133, at 5-7, 9.[13]  Specifically, Mr. Folsom alleges that the "sexual harassment from [Defendant] Davis went on for approx[imately] 2 months, to the point that Defendant Davis finally attempted to grab and did touch [Mr. Folsom's] penis."  *Id.* at 5; *see also id.* at 6 (alleging that Defendant Davis "actually touched (brushed) against" Mr. Folsom's penis when attempting to grab it, prompting Mr. Folsom to "chase[] Davis from the shower area naked [and] dripping wet").  Mr. Folsom indicates that this alleged touching occurred during "*the* shower incident," after which Mr. Folsom "went and spoke with" two officers at JCCC.  *See id.* at 6 (emphasis added); *see also id.* at 9.  Mr. Folsom also alleges that before this "last straw," Mr. Folsom had spoken with his prison job supervisor three or four times regarding "the incidents with [Defendant] Davis."  *Id.* at 6. As to alleged other incidents, Mr. Folsom asserts that "[Defendant] Davis propositioned [Mr. Folsom] on numerous occasions" regarding oral and anal sexual intercourse.  *Id.* at 5.  Mr. Folsom states that he previously excluded these additional allegations from his pleadings due to "respect for judicial proceedings."  *Id.*

Defendant Davis objects to the prospect of Mr. Folsom amending his Amended Complaint.  *See* Defs.' Resp. to Doc. No. 133, Doc. No. 134.  Primarily, Defendant Davis objects that Mr. Folsom has improperly waited nearly two years to allege the "new fact" that Defendant Davis touched Mr. Folsom's penis, asserting that this allegation "was not

---

[13] Mr. Folsom presented this response in a motion seeking relief on various grounds, including that he be granted an extension of time to file a response if Defendant Davis' dispositive motion was to be construed as one for summary judgment.  *See* Doc. No. 133. The Court denied Mr. Folsom's request as moot, noting that Defendant Davis' dispositive motion was being strictly construed as a motion to dismiss.  Order, Doc. No. 149, at 3-4.

mentioned in Plaintiff's Complaint, Amended Complaint, any of the grievances or requests to staff filed by Plaintiff at the Department of Corrections, nor in any of the Internal Affairs documents." *Id.* at 3.

Even if the Court were to accept Mr. Folsom's new allegations of additional harassing comments and a single touching by Defendant Davis, Mr. Folsom still does not present sufficient factual allegations to satisfy the objective component of an Eighth Amendment claim. That is, Defendant Davis' alleged conduct, while concerning, was not objectively sufficiently serious to cause a constitutional violation.

Not all circumstances involving a combination of sexual harassment and sexual assault are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *See Castillo v. Day*, 790 F.3d 1013, 1021 (10th Cir. 2015) (citing *Barney*, 143 F.3d at 1310 n.11)); *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003); *Joseph*, 2000 WL 1532783, at *2 (citing *Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997)); *Broadus v. Timme*, No. 11-cv-00802-CMA-KMT, 2012 WL 639310, at *6-7 (D. Colo. Jan. 30, 2012) (collecting cases) (R. & R. of Tafoya, J.), *adopted*, 2012 WL 638797 (D. Colo. Feb. 28, 2012). Mr. Folsom's circumstances are analogous to those in *Boddie*, in which a male prisoner alleged that a female corrections officer made sexual remarks and touched the prisoner's penis, among other actions. *See Boddie*, 105 F.3d at 859-60. The Second Circuit agreed that the prisoner had not stated the objective component of an Eighth Amendment claim:

> [Boddie] asserts a small number of incidents in which he allegedly was verbally harassed, touched, and pressed against without his consent. No single incident that he described was severe enough to be objectively,

> sufficiently serious. Nor were the incidents cumulatively egregious in the harm they inflicted. The isolated episodes of harassment and touching alleged by Boddie are despicable and, if true, they may potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court.

*See id.* at 861 (internal quotation marks omitted) (citing *Farmer*, 511 U.S. at 833-34;

*Rhodes*, 452 U.S. at 348-49 & n.13 (1981)).

Because Mr. Folsom cannot state the objective component of an Eighth Amendment violation on the facts he has alleged, the undersigned recommends that Mr. Folsom's request to amend his claims against Defendant Davis be denied. *See Hafen v. Carter*, 248 F. App'x 43, 46 (10th Cir. 2007) ("Defendants and the courts should not be tasked with responding to futile amendments, and thus 'a court may deny leave to amend if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss.'" (quoting *Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004))).

b. Doc. No. 157

Mr. Folsom separately moves to amend his Amended Complaint with factual allegations regarding the circumstances that led to the termination of Defendant Davis' employment at JCCC, stating that such termination was due to "'information that Davis was possibly stalking people at [a local mall]; sometimes while wearing his department uniform.'" Pl.'s Mot., Doc. No. 157, at 1 (quoting Supplemental Special Report Ex. 2, Doc. No. 154-2, at 2-3). Mr. Folsom suggests that these additional factual allegations lend credibility to Mr. Folsom's allegations regarding Defendant Davis' conduct. *See id.* at 1-2. Because such facts would not alter the above recommendation of dismissal for

failure to state a plausible claim against Defendant Davis, the undersigned further recommends that Mr. Folsom's separate motion to amend his Amended Complaint (Doc. No. 157) be denied.

      c.  Doc. Nos. 139, 146

Mr. Folsom seeks to add two individuals as defendants—Vicki Wilson, who was Mr. Folsom's work supervisor at JCCC, and Charlene Bredel, who was Ms. Wilson's supervisor—and he seeks to add new claims against these individuals. *See* Pl.'s Mot. to Add Party, Doc. No. 139; Pl.'s Mot. to Amend, Doc. No. 146. Mr. Folsom alleges that he "repeatedly engaged in conversation with [Ms.] Wilson . . . about [Defendant] Davis and his remarks, [which] continued to grow more threatening." Pl.'s Mot. to Amend at 3. Mr. Folsom states that Ms. Wilson "contacted" Ms. Bredel, who advised Ms. Wilson "not to worry about it" because Mr. Folsom "is a crazy." Pl.'s Mot. to Amend at 3; *see also* Pl.'s Reply, Doc. No. 145, at 1; Pl.'s Mot. to Add Party, Doc. No. 139, at 1 (asserting that Ms. Wilson states in a November 15, 2012 report that, approximately one month prior, Mr. Folsom had reported a guard watching him shower). Mr. Folsom also alleges that, after he reported Defendant Davis' conduct to her, Ms. Wilson reported to a mental health professional that Mr. Folsom showed "signs of behavioral problems such as irritability and anger" but Ms. Wilson "never mentioned sexual harassment." Pl.'s Mot. to Add Party at 1-2. On these bases, Mr. Folsom alleges that Ms. Wilson and Ms. Bredel failed to protect Mr. Folsom from Defendant Davis' conduct and, subsequently, the

"numerous [c]onstitutional violations that were set out in the original pleading." Pl.'s Mot. to Amend at 3; Pl.'s Reply, Doc. No. 145, at 1, 2.[14]

As noted, the failure to protect a prisoner from harm can, in certain circumstances, violate the prisoner's Eighth Amendment right to be free from cruel and unusual punishment. *Gonzales*, 403 F.3d at 1186. To state such a claim under § 1983, the plaintiff must allege facts to show, among other things, that the defendant knowingly "'disregard[ed] an excessive risk to inmate health and safety.'" *See id.* (quoting *Farmer*, 511 U.S. at 837). Here, the indicated, sparse factual allegations regarding Ms. Wilson's and Ms. Bredel's knowledge of the circumstances would not be sufficient to meet this standard, particularly in light of the above finding that Defendant Davis' conduct, as similarly described by Mr. Folsom to the Court in his Amended Complaint and other filings, was not objectively sufficiently serious to give rise to an Eighth Amendment violation. Thus, Mr. Folsom's requests to add Ms. Wilson and Ms. Bredel as defendants and to add claims against them (Doc. Nos. 139, 146) should be denied, as the proposed claims would be subject to dismissal for failure to state a claim upon which relief may be granted. *See, e.g.*, *Schepp v. Fremont Cnty.*, 900 F.2d 1448, 1451 (10th Cir. 1990) ("The district court was clearly justified in denying the motion to amend if the proposed amendment could not have withstood a motion to dismiss or otherwise failed to state a claim." (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

---

[14] Mr. Folsom also contends that Ms. Wilson's and Ms. Bredel's conduct violated the PREA. *E.g.*, Pl.'s Mot. to Amend at 3. As noted above, however, "courts have held that PREA 'does not create a right of action that is privately enforceable by an individual civil litigant.'" *Burke*, No. 09-3068-SAC, 2010 WL 890209, at *2; *supra* note 3.

2. Plaintiff's Motion for Default Judgment Against Defendant Francis (Doc. No. 166)

Mr. Folsom alleges that Defendant Francis is in default because he has failed to respond to this lawsuit. *See* Pl.'s Mot. Default J., Doc. No. 166, at 1-2. Mr. Folsom concedes, however, that Mr. Francis may not have been properly served in this matter. *See id.* at 3-4. Such failure of service is evidenced from the Court's Order of June 13, 2014 (Doc. No. 83) and a Process Receipt and Return filed by the United States Marshals Service on July 11, 2014 (Doc. No. 97). As an alternative, Mr. Folsom seeks the Court's permission to attempt again to serve Mr. Francis. *See* Pl.'s Mot. Default J. at 3-4.

The undersigned has recommended above that all claims against Defendant Francis be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); 42 U.S.C. § 1997e(c)(1). If that recommendation is adopted, the undersigned further recommends that Mr. Folsom's motion seeking either default judgment against Defendant Francis or an extension of time to serve Defendant Francis (Doc. No. 166) be denied.

3. Ongoing Discovery Issues

Mr. Folsom has filed several motions regarding ongoing discovery issues in this matter (Doc. Nos. 156, 158, 161, 163, 164, 165, 177). If the dispositions of Mr. Folsom's claims as set forth in this Report and Recommendation are adopted, these discovery motions should be denied as moot without prejudice to resubmission if and upon service being made on, and the case proceeding against, Defendant Grice. By separate order, the undersigned has granted the request of Defendants Knutson, Dowling, Davis, Harris,

McCollum, McDougal, Lee, and Farris to stay discovery in this matter pending resolution of their arguments for dismissal.

RECOMMENDATION

For the foregoing reasons, the undersigned recommends that, with the exception of an individual-capacity claim under § 1983 against Defendant Grice for retaliation involving misconducts at JCCC, all individual-capacity claims in the Amended Complaint should be dismissed for failure to state a constitutional claim upon which relief may be granted and, as to Defendants Knutson, Dowling, Davis, Harris, McCollum, McDougal, Lee, and Farris, as a result of qualified immunity. The undersigned further recommends that any official-capacity claims for money damages should be dismissed based upon the Court's lack of subject-matter jurisdiction over such claims, and that the official-capacity claims for money damages against Defendants Grice and Francis also be dismissed on the basis of Eleventh Amendment sovereign immunity. The dispositive motion filed by Defendants Knutson, Dowling, Harris, McCollum, McDougal, Lee, and Farris (Doc. No. 81) and the dispositive motion filed by Defendant Davis (Doc. No. 132) should be granted to the extent that dismissal is sought on these bases and should otherwise be denied. Finally, the undersigned recommends that Plaintiff's motions addressed above (Doc. Nos. 133, 139, 146, 157, 166) be denied.

NOTICE OF RIGHT TO OBJECT

The parties are advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by September 21, 2015, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised

that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation does not terminate the referral in the present case.

ENTERED this 4th day of September, 2015.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE