# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GLEN FOLSOM, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-13-632-D |
| MARK KNUTSON et al., | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Glen Folsom, an Oklahoma prisoner appearing pro se and proceeding *in forma pauperis*, brings this action under 42 U.S.C. § 1983, alleging in relevant part that a state prison employee retaliated against him in violation of the First Amendment to the U.S. Constitution. United States District Judge Timothy D. DeGiusti has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b). The matter is before the Court on Plaintiff's Motion for Default Judgment (Doc. No. 216) and Motion to Strike (Doc. No. 219); the Court's exercise of its authority to dismiss the action against the sole remaining Defendant, who has not been served (*see* Fed. R. Civ. P. 4(m)); and Plaintiff's "Emerg[e]nc[y] Motion to Court," construed as a motion for preliminary injunction (Doc. No. 202). The undersigned recommends that Plaintiff's motions be denied and that this action be dismissed without prejudice.

## BACKGROUND

*A.    Procedural History*

In December 2013, Plaintiff filed an Amended Complaint alleging that ten Defendants, each of whom is or was employed by the Oklahoma Department of Corrections ("ODOC"), violated Plaintiff's First, Eighth, and Fourteenth Amendment rights while he was incarcerated at an ODOC facility. *See* Am. Compl. (Doc. No. 43) at 1-15; Am. Compl. Ex. (Doc. No. 43-2) at 4-177.[1] Plaintiff sought damages against each Defendant in his or her individual and official capacities. *See* Am. Compl. at 14; R. & R. Mots. to Dismiss (Doc. No. 179) at 3, 5-7. Eight Defendants were properly served and moved to dismiss the Amended Complaint for failure to state a claim upon which relief could be granted under 42 U.S.C. § 1983.[2] *See* R. & R. Mots. to Dismiss at 4-5.

In September 2015, the undersigned recommended that all of Plaintiff's claims be dismissed, with the exception of one individual-capacity claim against Defendant Chanda Grice. *Id.* at 3, 6, 20-21. Plaintiff alleged that Ms. Grice, a former nurse at James Crabtree Correctional Center ("JCCC") in Helena, Oklahoma, falsely accused Plaintiff of misconduct because Plaintiff had reported to prison officials that Ms. Grice's friend, a

---

[1] Citations to documents filed with this Court use the page and attachment numbers assigned by CM/ECF. When quoting from Plaintiff's filings, the undersigned has occasionally corrected capitalization, punctuation, and unambiguous spelling errors to improve readability.

[2] All of Plaintiff's claims against another unserved Defendant were dismissed on screening. *See* R. & R. Mots. to Dismiss at 54; Order Adpt. R. & R. Mots. to Dismiss (Doc. No. 192) at 5-6.

fellow JCCC employee, had sexually harassed him. Am. Compl. at 6; *see also* R. & R. Mots. to Dismiss at 20-21 (citing *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010)).

On January 11, 2016, in adopting the undersigned's previous Report and Recommendation, Judge DeGiusti ordered that: (1) all individual-capacity claims in the Amended Complaint, except for the retaliation claim against Ms. Grice, be dismissed because the facts alleged did not state a claim for which relief could be granted under 42 U.S.C. § 1983; and (2) all official-capacity claims be dismissed because Plaintiff sought only damages and all relevant Defendants were immune from such relief. Order Adpt. R. & R. Mots. to Dismiss at 5-6. Thus, Plaintiff's retaliation claim against Ms. Grice in her individual capacity is the sole claim remaining in this lawsuit. *See* R. & R. Pl.'s R. 60(b) Mot. (Doc. No. 200) at 3; Order Adpt. R. & R. Pl.'s R. 60(b) Mot. (Doc. No. 213) at 1-3.

B. *Plaintiff's Attempts to Serve Ms. Grice*

On August 16, 2013, the Court issued an order authorizing Plaintiff to have a summons and a copy of his original pleading served on each named Defendant, including Ms. Grice, within 120 days. *See* Order Requiring Service & Special R. (Doc. No. 19) at 1-3; Fed. R. Civ. P. 4(m) (2012). It soon became clear that Ms. Grice was no longer employed at JCCC. *See, e.g.*, Order of Sept. 13, 2013 (Doc. No. 26) at 2-3.[3] The Court

---

[3] On September 5, 2013, the Court received a letter from Plaintiff seeking permission to file an amended complaint. The Court informed Plaintiff that he did not need permission to amend his Complaint because he had not served that pleading on any Defendant. *See* Order of Sept. 13, 2013, at 1-2 (citing Fed. R. Civ. P. 15(a)(1)). The Court also stayed all deadlines in the August 16, 2013 Order Requiring Service and Special Report "pending filing and review of Plaintiff's amended complaint." *Id.* at 2 (citing 28 U.S.C. §§ 1915, 1915A; 42 U.S.C. § 1997e(g)(2); Fed. R. Civ. P. 4(m)). The Court reinstated the Rule 4(m) deadlines on October 3, 2013, shortly after Plaintiff informed the Court that he

3

subsequently—over the course of the filing of an Amended Complaint and various motions by Plaintiff—authorized Plaintiff's continuing efforts to find and serve Ms. Grice, including instructing the United States Marshals Service ("USMS") to take reasonable steps to locate Ms. Grice in order to perfect service of process without disclosing any personal information to Plaintiff or other inmates. *See* Order of Oct. 3, 2013, at 2-3; Order of Dec. 27, 2013 (Doc. No. 48) at 1-2 (citing *Barrett v. Philpot*, 356 F. App'x 193, 198 (10th Cir. 2009)); Order of Apr. 17, 2014, at 1-2 (citing *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007)); Order of Oct. 15, 2014 (Doc. No. 107) at 2-3; Order of Dec. 12, 2014 (Doc. No. 119) at 2 (citing *Barrett*, 356 F. App'x at 198). The Court also twice extended Plaintiff's service deadline for good cause shown. *See* Order of Apr. 17, 2014, at 2-3 (extending deadline from January 31, 2014, to June 17, 2014); Order of Oct. 15, 2014, at 2-3 (extending deadline from June 17, 2014, to November 17, 2014); Fed. R. Civ. P. 4(m). Each time, the Court expressly instructed Plaintiff that, unless service was waived or proven by the extended deadline, Plaintiff must show good cause, in writing by a date certain, why his claims should not be dismissed without prejudice.

None of Plaintiff's efforts was successful. Plaintiff sought the Court's permission to serve Ms. Grice by publication as allowed under Oklahoma law where "with due diligence service cannot be made upon the defendant by any other method," Okla. Stat.

---

intended to wait another 90 days before filing an amended complaint. *See* Order of Oct. 3, 2013 (Doc. No. 28) at 2-3. The Court issued a separate Order authorizing service of the Amended Complaint on April 17, 2014. *See* Order of Apr. 17, 2014 (Doc. No. 67) at 1-4; Order Requiring Service of Am. Compl. & Special R. (Doc. No. 68) at 1-4.

tit. 12, § 2004(C)(3)(a). In July 2015, the Court informed Plaintiff that he did not need the Court's permission to attempt to serve Ms. Grice via publication. *See* Order of July 20, 2015 (Doc. No. 150) at 2 (citing Fed. R. Civ. P. 4(e)(1)). The Court also extended Plaintiff's service deadline for a third time because he had shown good cause for his repeated failures to serve Ms. Grice. *Id.* at 2-3 (extending deadline to September 3, 2015).

In February 2016, the Court granted Plaintiff a fourth and presumptively final extension of time to serve process on Ms. Grice. *See* Order of Feb. 16, 2016 (Doc. No. 198) at 4. Unless service by publication was proven by April 1, 2016, Plaintiff was instructed to show good cause, in writing, by April 8, 2016, why his claim against Ms. Grice should not be dismissed without prejudice. *See id.* That Order also quoted the relevant portions of Oklahoma's service-by-publication statute to ensure that the pro se Plaintiff was aware of the statute's specific rules governing the county in which the notice must be published and the number of consecutive weeks the notice must run before service can be considered proper under state law. *Id.* at 4-5 (quoting Okla. Stat. tit. 12, § 2004(C)(3)(a), (C)(3)(c)(1)-(2), (C)(3)(d)).

On May 5, 2016, one month after Plaintiff's most recent deadline expired, the Court received Plaintiff's Motion for Default Judgment and attached Proof of Publication. *See* Pl.'s Mot. Default J. (Doc. No. 216); Proof of Publ'n (Doc. No. 216-1). The notarized Proof of Publication reads:

**PROOF OF PUBLICATION**

> Cherokee Messenger & Republican
> 216 S. Grand • P.O. Box 245
> Cherokee, OK 73728
> (580) 596-2244
>
> I, Desiree Malicoat, of lawful age, being duly sworn upon oath, deposes and says that I am an Authorized Agent of the Cherokee Messenger & Republican, a weekly publication that is a "legal newspaper" as that phrase is defined in 25 O.S. § 106 for the City of Cherokee, for the County of Alfalfa, in the State of Oklahoma, and that the attachment hereto contains a true and correct copy of what was published in said legal newspaper in consecutive issues on the following dates:
>
> **INSERTION DATES:** 3/24/16
>
> **PUBLICATION FEE........................$** 39.90
>
> [/s]  *Desiree Malicoat*
>         Authorized Agent
>
> State of Oklahoma
> County of Alfalfa
>
> Signed and sworn to before me this   24
> day of   March  , 2016 by Heather Gilley.
>
> [/s]  *Heather Gilley*
>         Notary Public

Proof of Publ'n at 1.  The Proof of Publication appears to be a true and correct copy of the Summons by Publication Notice that the Clerk of this Court issued to Plaintiff on March 3, 2016.  *Compare id.*, *with* Summons by Publ'n Notice (Doc. No. 204) at 1.

On May 17, 2016, the eight served Defendants appeared specially through counsel to file a "Notice to the Court in Response" to Plaintiff's Motion for Default Judgment.  *See* Defs.' Notice to Court (Doc. No. 217).  Counsel stated that, while he "does not represent Defendant Chanda Grice in the case presently before this Court," the

6

served Defendants are submitting the Notice "in the interest of justice[] to demonstrate the existence of applicable Oklahoma law that renders Plaintiff barred from receiving default judgment against Defendant Grice." *Id.* at 1; *see also id.* at 4 (citing Okla. Stat. tit. 57, § 566.4(F)). These Defendants also noted that an Oklahoma statute prohibits the incarcerated Plaintiff from "be[ing] appointed by any court to serve process on any defendant," and, in any event, "the duration of [Plaintiff's] publication was ineffective to perfect service by publication upon Defendant Grice under Oklahoma law." *Id.* at 1, 3-4 (quoting Okla. Stat. tit. 12, § 2004(C)(7); citing *id.* § 2004(C)(3)(c)). Plaintiff filed a "Reply and Motion to Strike" the served Defendants' Notice. *See* Pl.'s Mot. to Strike (Doc. No. 219) at 1-3.

## ANALYSIS

*A.   Motion for Default Judgment*

Plaintiff now seeks a $5 million default judgment against Ms. Grice. *See* Pl.'s Mot. Default J. at 1. Plaintiff states that notice of this lawsuit "has been duly served by publication . . . specifically directed to Ms. Chanda Grice, whose whereabouts are unknown, from March 24, 2016[,] to May 3, 2016[,] 41 days as this court asked for," and that "no answer or other defense has been filed by the Defendant." *Id.*

Rule 55 of the Federal Rules of Civil Procedure sets out a two-step process that a plaintiff seeking default judgment must follow before the court may enter judgment in his or her favor. *Williams v. Smithson*, No. 95-7019, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (citing Fed. R. Civ. P. 55). First, the plaintiff "must apprise the court that the [defendant] has failed to plead or otherwise defend by requesting 'by affidavit or

otherwise' that the clerk enter [the defendant's] default on the docket." *Id.* (quoting Fed. R. Civ. P. 55(a)). Second, after the clerk enters the defendant's default, the plaintiff must apply for default judgment either by application to the court or on affidavit to the clerk. *See id.*; Fed. R. Civ. P. 55(b). "Failure to successfully complete the first step of obtaining an entry of default necessarily precludes the granting of default judgment at step two." *Adams v. ModernAd Media, LLC*, No. 12-cv-513, 2012 WL 3039061, at *1 (D. Colo. July 25, 2012) (citing *Williams*, 1995 WL 365988, at *1).

Plaintiff has not yet requested that the Clerk enter Ms. Grice's default, and no such default has been entered. *See* Pl.'s Mot. Default J. at 1. Accordingly, Plaintiff's motion for default judgment should be "denied as premature for failure to comply with Rule 55(a)." *Adams*, 2012 WL 3039061, at *2 (internal quotation marks omitted).

Further, even if Plaintiff had requested entry of default, he cannot show that Ms. Grice "has failed to plead or otherwise defend" against this lawsuit. Fed. R. Civ. P. 55(a). Finding that a defendant is in default necessarily requires the plaintiff to show that the defendant was properly served with notice of the lawsuit. *Williams v. Medicalodges, Inc.*, No. CIV-06-2554, 2007 WL 1302540, at *1 (D. Kan. May 3, 2007). "In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as a defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Thus, "one becomes a party officially," and can be held in default for failure "to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citing Fed. R. Civ. P. 4(a),

12(a)(1)(A)); *see also Williams*, 2007 WL 1302540, at *1.

Under Oklahoma law, a plaintiff must prove that service "substantially complied" with the relevant requirements in order to show that service was sufficient to invoke the court's authority over a named defendant. *See Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 798-99 (10th Cir. 2008) (citing *Graff v. Kelly*, 814 P.2d 489, 495 (Okla. 1991)). In making this determination, the court considers whether: (1) there is a state statute authorizing the method of service employed; (2) the statute's express terms were observed; and (3) service comports with "fundamental due process requirements" given the totality of the circumstances in the particular case. *See id.* at 799 (citing *Graff*, 814 P.2d at 493); *Shaffer v. Skechers, USA, Inc.*, No. CIV-09-167-D, 2009 WL 3837408, at *2 (W.D. Okla. Nov. 16, 2009) (citing *Hukill*, 542 F.3d at 798-99; *Shamblin v. Beasley*, 967 P.2d 1200, 1209 (Okla. 1998); *Vance v. Fed. Nat'l Mtg. Ass'n*, 988 P.2d 1275, 1279-80 (Okla. 1999)). "When notice is by publication, as it is here, the general rule tends toward strictness." *Tucker v. New Dominion, L.L.C.*, 230 P.3d 882, 886 (Okla. 2010) (citing *Grannis v. Ordean*, 234 U.S. 385, 395 (1914)).

As was expressly explained to Plaintiff, Oklahoma's service-by-publication statute requires that the Summons by Publication Notice appear one day each week, for three consecutive weeks, in a legal newspaper that is published in the county where the petition, or complaint, is filed. *See* Order of Feb. 16, 2016, at 4 (quoting Okla. Stat. tit. 12, § 2004(C)(3)(c), (c)(3)(d)). Plaintiff's "proof of publication" affidavit states that the *Cherokee Messenger & Republican*, "a legal newspaper . . . for the City of Cherokee, for the County of Alfalfa," published the Notice one time, in the March 24, 2016 edition of

the newspaper. Proof of Publ'n at 1. This does not meet the requirement of publication at least once a week for three consecutive weeks. *See* Okla. Stat. tit. 12, § 2004(C)(3)(c). Further, given that Plaintiff filed his lawsuit in this Court's courthouse in Oklahoma City, Oklahoma, which is located in Oklahoma County, it is not apparent that a newspaper for Alfalfa County would meet the requirement of a "newspaper . . . published in the county where the petition is filed." *Id.*; *cf. Andrews v. Palmer*, No. CIV-14-379-RAW, 2016 WL 204470, at *2 (E.D. Okla. Jan. 15, 2016) ("Under Oklahoma law, to obtain service by publication, the summons must be published in the county where the lawsuit was filed. Plaintiffs[, by publishing their summons in a Wyoming newspaper,] made no attempt to comply with Oklahoma law in this regard." (citing Okla. Stat. tit. 12, § 2004(c)(3)(c)).

Plaintiff's affidavit does not show substantial compliance with the terms of Oklahoma's service-by-publication statute. Nor is there any indication that Ms. Grice has actual notice that she has been named as a Defendant in this lawsuit. Accordingly, Plaintiff cannot show that Ms. Grice has "failed to plead or defend" against the action. Fed. R. Civ. P. 55(a); *see also Andrews*, 2016 WL 204470, at *2. For these reasons, the undersigned recommends that Plaintiff's Motion for Default Judgment (Doc. No. 216) be denied.

B.     *Dismissal for Failure of Timely Service*

"If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m) (2012). District courts in this circuit "employ[] a two-step

analysis for dismissal pursuant to Rule 4(m)." *Womble v. Salt Lake City Corp.*, 84 F. App'x 18, 20 (10th Cir. 2003) (citing *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995)). First, if the plaintiff shows "good cause" for his or her failure to properly serve a defendant, then the court must extend the deadline for an appropriate period. *Id.*; Fed. R. Civ. P. 4(m). Second, "[i]f the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted." *Espinoza*, 52 F.3d at 841.

Plaintiff initially offered no explanation for his failure to serve Ms. Grice "in the manner and for the time prescribed," Okla. Stat. tit. 12, § 2004(C)(3)(d), by Oklahoma's service-by-publication statute. *See* Pl.'s Mot. Default J. at 1. On May 17, 2016, the served Defendants specially filed their Notice informing the Court that Plaintiff's summons had not been published for the statutorily mandated three consecutive weeks. *See* Defs.' Notice to Court at 1, 3-4. Plaintiff responded that the newspaper that published the Summons by Publication Notice told him that "they would provide proof of publication for 1 time a week for 3 consecutive weeks." Pl.'s Mot. to Strike at 2. Still, the fact remains that Plaintiff has not presented any affidavit or documentation from the relevant newspaper reflecting that the Summons by Publication Notice was actually published for three consecutive weeks. In light of this history, Plaintiff is not entitled to a mandatory extension for good cause, which requires "meticulous efforts to comply with" Rule 4. *In re Kirkland*, 86 F.3d 172, 176 (10th Cir. 1996); *see also Jones v. Frank*, 973 F.2d 872, 874 (10th Cir. 1992) (affirming dismissal of pro se plaintiff's complaint under Rule 4 where plaintiff "fail[ed] to correct his service defects after being told what was

wrong" with his attempt to serve process on the United States); *Herrera v. Zavares*, No. 09-cv-1229, 2010 WL 3853312, at *13-14 (D. Colo. Sept. 28, 2010) ("The purpose of Rule 4(m) and the requirement of expeditious service is to ensure that the case proceeds promptly against those defendants against whom service can be made.").

Nor has Plaintiff shown that another extension should be permissively provided to him. Despite—as detailed above and in prior orders—the Court providing Plaintiff multiple extensions, explanations of the relevant statutes and rules, and the assistance of the USMS, Plaintiff has failed to serve Ms. Grice for now close to three years. Plaintiff's pro se status and diligent attempts to serve Ms. Grice warranted the prior extensions but at some point attempts, no matter how numerous, are not enough. The Court must recognize that service is Plaintiff's responsibility, he has not accomplished service on Ms. Grice, and the matter must be put to a reasonable close. *Cf. Herrera*, 2010 WL 3853312, at *14 ("Much as the train must eventually leave the station with those aboard—and leave behind those who have not arrived on time—this litigation began moving forward against those Defendants that [Plaintiff] was able to promptly serve, and [this Defendant] was not among them."). In reaching this conclusion, the undersigned notes that, although the two-year limitations period for Plaintiff's 42 U.S.C. § 1983 claim against Ms. Grice has likely expired, Oklahoma's "savings statute" likely would allow Plaintiff to file a new action against Ms. Grice within one year of dismissal. *See* Okla. Stat. tit. 12, § 100; *Williams v. City of Guthrie*, 109 F. App'x 283, 286 (10th Cir. 2004).

C. *Motion for Preliminary Injunction*

On March 1, 2016, Plaintiff filed an "Emerg[e]nc[y] Motion to Court" asking for a

"TRO and a[n] injunction" against nonparty Oklahoma Department of Corrections ("ODOC"). Pl.'s Mot. Prelim. Inj. (Doc. No. 202) at 1. Plaintiff seeks a temporary restraining order ("TRO") or preliminary injunction to "stop all harassment, retaliation, mental stress [and] everything" he has allegedly experienced while incarcerated at Joseph Hart Correctional Center ("JHCC") in Lexington, Oklahoma. *See id.* He also seeks a court order directing the USMS "to see what [is] going on" at JHCC. *Id.*

Plaintiff's Motion is construed as seeking a preliminary injunction under Federal Rule of Civil Procedure 65(a) rather than a TRO under Federal Rule of Civil Procedure 65(b). Rule 65(b) generally contemplates that a TRO be issued only for a short term and "without written or oral notice to the adverse party or its attorney." *See* Fed. R. Civ. P. 65(b)(1). Because Defendants have received and responded in writing to Plaintiff's motion (Doc. No. 207), Plaintiff's request for a TRO is superseded by his accompanying request for a preliminary injunction. Pl.'s Mot. Prelim. Inj. at 1; *see, e.g.*, *Farris v. Frazier*, No. CIV-12-1099-W, 2014 WL 3749142, at *15 (W.D. Okla. July 29, 2014), *aff'd*, 599 F. App'x 851 (10th Cir. 2015); *Kan. Hosp. Ass'n v. Whiteman*, 835 F. Supp. 1548, 1551 (D. Kan. 1993); *see also* 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2951, at 276-77 (3d ed. 2013).

A preliminary injunction is an "extraordinary remedy" meant to preserve the relative positions of the parties until a trial on the merits of the claims at issue can be held. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The party seeking a preliminary injunction generally must show: (1) a substantial likelihood that he or she will prevail on the merits;

(2) he or she will suffer irreparable harm unless the injunction is issued; (3) that the potential harm from the threatened injury to the moving party outweighs the harm from the preliminary injunction to the nonmoving party; and (4) the absence of an adverse impact on the public interest. *Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir. 2001). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Id.* Although the Court will construe a pro se litigant's filings liberally, requests for relief must be supported, at a minimum, by specific factual allegations, which require no special legal training to provide. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991); Fed. R. Civ. P. 7(b)(1)(B).

As an initial matter, Plaintiff's claims against all Defendants other than Ms. Grice, who no longer works for ODOC, were dismissed before Plaintiff filed this Motion on March 1, 2016. *See* Order Adpt. R. & R. Mots. to Dismiss at 5-6; Order Adpt. R. & R. Pl.'s R. 60(b) Mot. at 1-3. Because no relevant ODOC official remains a party to this lawsuit, Plaintiff cannot obtain the injunctive relief he seeks against any such official. *See Levie v. Ward*, No. CIV-05-1419-HE, 2007 WL 2840388, at *2, *23 (W.D. Okla. Sept. 27, 2007). Nor does Plaintiff offer any authority for the proposition that the Court may order the USMS to "see what [is] going on" at JHCC or to investigate Plaintiff's allegations. Even if the Court had such authority, an investigation directed at the activity of JHCC officials would not "provide[] any 'conclusive relief' because [Plaintiff is] no longer housed there." *Stephens v. Jones*, 494 F. App'x 906, 911 (10th Cir. 2012); *see* Pl.'s Notice of Address Change (Doc. No. 220) at 1 (filed June 20, 2016).

Moreover, Plaintiff has not shown a "clear and unequivocal" right to a preliminary

injunction. First, Plaintiff's request for a preliminary injunction bears no relation to the conduct asserted in this action's sole surviving claim. That claim seeks damages against Ms. Grice, a former nurse at JCCC, for filing an allegedly false misconduct report against Plaintiff while he was incarcerated at JCCC. Plaintiff's motion for a preliminary injunction, on the other hand, seeks a court order directing unnamed ODOC officials "[t]o stop all harassment, retaliation, mental stress, [and] everything" Plaintiff has allegedly experienced while incarcerated at a different ODOC facility. *Compare* Am. Compl. at 6, *with* Pl.'s Mot. Prelim. Inj. at 1. A preliminary injunction grants immediate relief of the same character as that which may be finally granted. *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945); *see also Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010) ("[T]he movant must establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." (internal quotation marks omitted)). The Court cannot properly issue a preliminary injunction when, as here, the movant seeks relief beyond the scope of the complaint. *See Farris*, 2014 WL 3749142, at *15-16; *Stouffer v. Eulberg*, No. CIV-09-320-C, 2010 WL 567998, at *1, *2 & n.3 (W.D. Okla. Feb. 11, 2010) (citing *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) ("[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action.")).

Second, Plaintiff does not allege—let alone show beyond a speculative level—that he will suffer irreparable harm unless the preliminary injunction is issued. *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) ("Purely speculative harm

will not suffice, but rather, a plaintiff who can show significant risk of irreparable harm has demonstrated that the harm is not speculative and will be held to have satisfied his burden." (internal alteration and quotation marks omitted)).

Finally, Plaintiff has failed to show that the specific injunctive relief he seeks—i.e., a court order directing ODOC officials to cease unspecified conduct and directing a federal agency to investigate state prison officials' conduct—"is not adverse to the public interest." *Kikumura*, 242 F.3d at 955. A federal court considering a motion for injunctive relief affecting the conditions of a prisoner's confinement must give substantial weight to the adverse impact on public safety and on prison operations. 18 U.S.C. § 3626(a)(2); *Stephens v. Jones*, 494 F. App'x 906, 911-12 (10th Cir. 2012). The Supreme Court has declared that courts are not to substitute their judgment on matters of institutional administration for the determinations made by prison officials. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987). Accordingly, courts hesitate to interfere with prison officials' decisions concerning the day-to-day administration of prisons, to which deference must be accorded unless they violate the Constitution or federal law. *See Turner v. Safley*, 482 U.S. 78, 84-86 (1987). Plaintiff's desired relief would interfere with prison administration, such that the "public interest" factor weighs against the issuance of the extraordinary remedy of injunctive relief.

## RECOMMENDATION

For the reasons set forth above, the undersigned recommends that Plaintiff's Motion for Default Judgment (Doc. No. 216) and Motion to Strike (Doc. No. 219) be DENIED; that Plaintiff's remaining claim be DISMISSED without prejudice under

Federal Rule of Civil Procedure 4(m) for failure to effect service; and that Plaintiff's "Emerg[e]nc[y] Motion to Court" (Doc. No. 202), construed as a motion for preliminary injunction, be DENIED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by August 10, 2016, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 20th day of July, 2016.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE